88 So.2d 141 (1956)
PARKING FACILITIES, Inc., A Florida corporation, Appellant,
v.
The CITY OF MIAMI BEACH, a municipal corporation under the laws of the State of Florida, Appellee.
Supreme Court of Florida, En Banc.
June 8, 1956.
Rehearing Denied September 13, 1956.
Ward & Ward, Miami, for appellant.
Ben Shepard, Miami, and Joseph A. Wanick, Miami Beach, for appellee.
DREW, Chief Justice.
Appellant land owner in the City of Miami Beach sought to compel the defendant city to issue a building permit allowing it to construct a multiple level parking garage with stores on the ground floor and facilities within for the sale of gasoline, oil and grease and similar garage service. The building was to be constructed on land located within a district zoned by the defendant city as "REE multiple-family district." The lower court directed the issuance of the building permit to construct the parking garage and held that portion of the ordinance, infra, limiting and restricting such building to the parking of automobiles to be unconstitutional and void, holding with respect thereto "there is no reasonable factual basis for the conclusion reached by the City Council that the general welfare of the City of Miami Beach required that `multiple level automobile parking garages' be limited and restricted to the parking of automobiles." With respect, however, to the provision in the ordinance under attack which excluded stores from such building, the court held that such provision was valid and constitutional and "not violative of any right of the plaintiff." The appellant land owner has appealed from that portion of the decree adverse to it. No *142 cross-assignments of error were taken by the defendant city, hence the sole question before us is whether the ordinance which allows the construction of a parking garage in a multiple-family district but excludes therefrom stores is a valid and constitutional exercise of the police powers of the municipality.
The portion of the zoning ordinance under consideration, so far as the questions involved in this appeal are concerned, reads as follows:
 "Section 5½
 "Use Regulations
 "REE Multiple-family district
"In the `REE' Multiple-family District no building or land shall be used and no building shall be hereafter erected, constructed, reconstructed, or structually altered, which is designed, arranged or intended to be used for any purpose unless otherwise provided for in this ordinance except for one or more of the following uses:
"1. Any use permitted in the `RE' Multiple-family District.
"2. Multiple-level Automobile Parking Garages only upon approval and permit by the City Council of the City of Miami Beach, Florida, after a public hearing at which due consideration shall be given to the effect upon traffic of the proposed use and then only if the construction and use of said parking garage shall be subject to the following conditions and restrictions;
"a. That the building shall be fully enclosed and shall conform in outward appearance to that of other buildings in the area;
"b. That no exterior sign other than an identification sign shall be permitted, the location, design and size of which shall be approved by the City Council;
"c. That the services rendered shall be restricted to the parking of automobiles."
Appellant relies heavily upon a decree of the same circuit judge of June 1, 1954 relating to the same section of the zoning ordinance as affirmed by this Court without opinion in City of Miami Beach v. Midcentury Corp., Fla. 1954, 75 So.2d 606. While the same section of the ordinance was involved in the Midcentury case as in this case, the factual situation was entirely different. In the Midcentury case, the main point at issue was not whether the city may lawfully prohibit stores in such a parking garage but whether the restriction limiting the use of the land involved in that case to parking garages was valid. In the Midcentury case the court upheld the land owner's contention that the zoning of his property for uses other than business was unconstitutional and void. In this case the same judge, in commenting on the Midcentury case, said:
"That the decree in the case of Midcentury Corp. v. City of Miami Beach, relied upon by plaintiff's counsel as being determinative of the issues in this case is readily distinguishable on the facts. The Court there found and determined, that the land there involved not only abutted directly upon business property but that other surrounding environmental facts and circumstances rendered the existing zoning in its application to that land unreasonable, and that any zoning other than business uses deprived the owners of the beneficial use of their property."
The record in this case shows that plaintiff's property is located in the heart of a multiple-family district where stores are prohibited. The reasonableness of such classification is not an issue here. There is nothing in the record to indicate that the ordinance under question deprives the plaintiff of the beneficial use of its property. Forde v. City of Miami Beach, 146 Fla. 676, 1 So.2d 642. Not only does the record show that the parking of automobiles is one of gravest problems faced by the City of Miami Beach but this Court judicially knows that such problem is one of the most pressing and serious confronting *143 governmental bodies. The solution of this problem or anything which tends to solve it necessarily contributes to the general welfare. The construction of a parking garage as required in the ordinance in a multiple-family district is not detrimental to the district or inconsistent with the uses allowed therein but, on the contrary, is essential to the maintenance of the integrity of such district. On the other hand, the use of a portion of the building for stores or other business enterprises would violate the integrity of the district and plant therein a growth which could well spread and destroy the character of the neighborhood. It would constitute spot zoning of the worst order, a practice which we and all other courts have universally condemned. Moreover, these zoning ordinances come to us with the presumption of validity. City of Miami Beach v. Hogan, Fla., 63 So.2d 493, and cases there cited. We are not authorized to substitute our judgment in matters of this kind for that of the constituted authorities of the City of Miami Beach so long as their actions are, as here, within constitutional limitations.
We think the eminent chancellor below correctly determined the issues in this case and that the decree appealed from is without error.
Affirmed.
THOMAS, THORNAL and O'CONNELL, JJ., and STANLY, Associate Justice, concur.
TERRELL and ROBERTS, JJ., dissent.
ROBERTS, Justice (dissenting).
We here review a decree of the Circuit Court of Dade County holding valid and constitutional as to plaintiff, appellant here, a provision of the zoning ordinance of the City of Miami Beach.
The ordinance in question, being Ordinance No. 973, was adopted in 1951 as an amendment to the general zoning ordinance (No. 289). It established a new Use District, labelled "REE", to permit the construction and operation of multiple-level parking garages in the Districts so designated, in addition to all the uses authorized for "RE" Use Districts. "RE" is the designation for hotel and apartment-house Use Districts, although such uses as miniature golf courses, public schools, lodge halls, churches and synagogues are permitted therein as well as a few other commercial uses when approved by the city.
As shown by the city's "Use District Map", four "REE" Use Districts had been established in the City of Miami Beach as of April 1953. One of these, comprising four blocks, is located on Collins Avenue near its intersection with Lincoln Road, and we have heretofore considered the validity vel non of Ordinance No. 973 in controversies arising out of the proposed construction of a multiple-level parking garage in the particular "REE" District. In Drexel v. City of Miami Beach, Fla., 64 So.2d 317, 318, we held unconstitutional and void a provision of the ordinance prohibiting the construction of multiple-level parking garages except upon "`approval and permit by the City Council * * * after a public hearing at which due consideration shall be given to the effect upon traffic of the proposed use * * *.'" for the reason that such provision vested in the municipal authorities an arbitrary discretion without prescribing definite rules and conditions for the guidance of the authorities in the exercise of their discretionary power.
The property there involved passed into the hands of the Midcentury Corporation; and in a suit filed by that corporation against the City of Miami Beach, Ordinance No. 973 was again attacked  this time on the ground that the provision of the ordinance restricting the use of multiple-level parking garages to the parking and servicing of cars, only, was arbitrary and unreasonable as to the plaintiffs in that case. The lower court held that it was and entered a decree finding and decreeing that "the challenged ordinance * * * insofar as it prohibits the use by the plaintiffs of the real property described *144 in such bill * * * for the purpose of constructing thereon a building in which, on the upper floors, there shall be a multiple level garage and, on the ground floor, there shall be stores * * * and for the purpose of operating such garage and stores in such building when it shall have been constructed, is now, and was * * * unreasonable and void. The defendant municipality is therefore enjoined from enforcing the mentioned ordinance for the purpose of preventing or interfering with such use." This decree was affirmed by this court without opinion. City of Miami Beach v. Midcentury Corp., 75 So.2d 606.
The plaintiff in the instant suit sought the same relief as did the plaintiffs in the Midcentury case, that is, a decree compelling the city to issue it a permit to construct retail stores on the ground floor of a proposed multiple-level parking garage and, in addition, permission to furnish servicing, such as gas, oil, and washing, to the cars utilizing the parking facilities of the garage. (The ordinance had been amended to provide that the parking garage could be used for the parking of cars, only, thus prohibiting the servicing of cars parked therein.) The property upon which plaintiff proposes to construct its parking garage is located between 38th and 39th Streets on Collins Avenue, some twenty blocks distant from the property involved in the Midcentury case. In the instant case, the lower court held that it was unreasonable and arbitrary for the city to withhold from plaintiff the right to furnish services ordinarily connected with a parking garage to the patrons thereof, and the ordinance was held to be invalid in this respect. The city has not cross-appealed from this portion of the decree. However, the decree also found that it was not unreasonable to deny to plaintiff the right to construct retail stores on the ground floor of the garage, and the ordinance was held to be constitutional and valid as to plaintiff in this respect. It is this portion of the decree which we here review, upon plaintiff's appeal therefrom.
In the final decree here reviewed, the Chancellor found that the Midcentury case was "distinguishable on the facts." He said: "The Court there found and determined, that the land there involved not only abutted directly upon business property but that other surrounding environmental facts and circumstances rendered the existing zoning in its application to that land unreasonable, and that any zoning other than business uses deprived the owners of the beneficial use of their property." We will assume (without deciding, since it is unnecessary) that the Midcentury case is not decisive here, as found by the same Chancellor who heard and decided the Midcentury case, and will decide the question here presented on the basis of the facts developed in the instant case.
It appears that the ordinance in question was adopted by the city, in the exercise of its zoning powers, to meet the need for parking facilities by hotels and apartments in the areas designated as "RE". It goes without saying that zoning restrictions must "find their justification only in some aspect of the police power asserted fairly and impartially in the interest of the public welfare, health, safety, and morals." State ex rel. Taylor v. City of Jacksonville, 101 Fla. 1241, 133 So. 114, 116. That the public welfare required the opening up of certain hotel and apartment zones to the purely commercial venture here involved has not, to our knowledge, been questioned and was apparently with the full approval of the hotel and apartment owners in the surrounding area. So the question here is on the reasonableness, vel non, of the city's determination that a parking garage without retail stores would serve the public welfare, but that it would be contrary to the public welfare, health, safety or morals to allow such garages to incorporate several attractive retail stores on their ground floors. We confess that we are unable to find any justifiable distinction between the two situations. To paraphrase the language of this court in City of Miami Beach v. 8701 Collins Ave., Fla. 1955, 77 So.2d 428, 430 (where the question was *145 whether there was any "justifiable distinction" between retail stores, on the one hand, and other commercial establishments, such as barber shops, drug sundry shops, and the like, on the other): "It is impossible to comprehend how a multiple-level garage with retail stores on its ground floor could be considered more obnoxious or detrimental to the public welfare than a multiple-level parking garage without such stores. If there be no justifiable distinctions, and none are indicated, then certainly the restrictions of the amendment, insofar as the plaintiff here is concerned, are discriminatory, unconstitutional and void." The one could not possibly be more offensive than the other to the hotel and apartment owners or guests, insofar as the use and looks of the building are concerned; and the comparatively negligible effect on traffic of the existence of the stores in such a situation is immediately apparent.
The city defends the provision of the ordinance in question on the ground that to allow the operation of retail stores in the area would "create an island of stores completely surrounded by `ocean-front' and `near-the-ocean' hotels, and result in so-called `spot zoning', which is `a practice universally condemned,'" citing City of Miami Beach v. Lachman, Fla., 71 So.2d 148, 154. It also contends that the plaintiff has no standing to attack the zoning "because it can profitably use its land for hotel and apartment purposes, and is not being deprived of the beneficial use of its property."
As to the latter contention, no authority need be cited for the proposition that if a zoning ordinance is, in fact, unreasonable, as having no substantial relation to the public health, safety, morals or welfare, any deprivation by it of the free use of the property by the owner is a taking of property without just compensation, and thus unauthorized. As a matter of fact, this same contention was made by the city in the Midcentury case and was, of course, disallowed by the lower court in that case, and affirmed here.
As to the contention that this would amount to "spot zoning," the city overlooks the fact that the "spot zoning", if such it was, was initiated by it when it undertook to establish four areas within the city's apartment and hotel zones where multiple-level parking garages would be allowed. The record shows that, even in those areas, only a few locations remain vacant and therefore available for such construction. The plaintiff is undertaking to construct a facility badly needed in the city to meet traffic and parking problems, but is confronted with the fact that such a project would be of doubtful financial feasibility without the assurance of rentals from retail stores or other business uses. And, in our opinion, it is unreasonable and arbitrary on the part of the city to insist that, if plaintiff undertakes to supply this facility, it must do so at the risk of financial loss on the project, simply because the city does not desire a few retail stores (200 feet) opening on to the street in the area in question, and when, as noted above, the installation of such stores in the multiple-level parking garage could not possibly be any more obnoxious or detrimental to the public safety, health, morals and welfare than the operation and use of such garage without such stores.
Since we can find no basis in the public welfare, health, safety or morals for the distinction sought to be made by the city, we are driven irresistibly to the conclusion that the basis for the distinction is purely economic, that is, that the plaintiff here is to be denied the use of his property for retail stores in order to protect some other citizen who has made such an investment elsewhere. (It might be noted, parenthetically, that at the oral argument on this appeal it was stated that the City of Miami Beach has now amended its zoning ordinance to authorize the installation of banking facilities on the ground floor of multiple-level parking garages. The fact was not before the lower court and is not considered in our review of the decree appealed from; it is mentioned *146 only as corroboration of the conclusion which we have reached, solely on the basis of the record here, that by the restriction in question the city could have been activated only by economic reasons, rather than from considerations of the public health, safety, morals or welfare.) It is settled in this jurisdiction that zoning for economic reasons will not be sustained. Lippow v. City of Miami Beach, Fla. 1953, 68 So.2d 827; Charnofree Corporation v. City of Miami Beach, Fla. 1955, 76 So.2d 665. Under our system of government, we do not permit one citizen to be penalized in the use of his property, merely to protect the investment of another. But to permit the decree of the lower court to stand would lead to this odious result.
For the reasons stated, it is my opinion that, insofar as the ordinance prohibits the installation by plaintiff of retail stores on the ground floor of the multiple-level parking garage proposed to be constructed by it, it is arbitrary, unreasonable, and an abuse of administrative discretion.
Accordingly, that portion of the decree appealed from by plaintiff should be reversed.
TERRELL, J., concurs.