94 So.2d 168 (1957)
David ROTT and Harry Rott, Appellants,
v.
CITY OF MIAMI BEACH, a Florida municipal corporation, Appellee.
Supreme Court of Florida, En Banc.
March 13, 1957.
Rehearing Denied April 24, 1957.
*169 Copeland, Therrel & Baisden, Miami Beach, for appellants.
Ben Shepard, Miami, and Joseph A. Wanick, Miami Beach, for appellee.
DREW, Justice.
This controversy between David Rott and Harry Rott and the City of Miami Beach commenced about April 6, 1955 when the attorney for the Rotts appeared before the City Council and requested that a notice be advertised that a public hearing would be conducted on an application to permit the construction of a multiple level parking garage at the corner of 27th Street and Collins Avenue, on Lots 5, 6, 7 and 8 of Block 7, of the ocean front property of the Miami Beach Improvement Company, according to the plat thereof recorded in Plat Book 5 at pages 7 and 8 of the public records of Dade County. The advertisement requested was run in the local newspaper and hearing was held thereon on the 20th of April following, at which time the attorney for the Rotts again appeared and was heard by the Council. The Council took no action on the application but postponed a decision thereon until further study and consideration could be given the proposal. The following July 6th the attorney again appeared before the City Council on behalf of the Rotts and extended discussions took place between the members of the Council, the attorney for the applicants for the permit, city attorney and others. From an examination of these proceedings it appears that what the Messrs. Rott desired to do was to construct a multiple level parking garage on the subject property according to certain plans which were apparently exhibited to the Council in connection with the application for a building permit. These plans called for the construction of the multiple level parking garage on the subject area and revealed that a considerable number of mercantile stores were to be located on the street level for the purpose of financing the project, it appearing from the disclosures of the proceeding that a successful financial venture could not be undertaken in the absence of the revenue that would be derived from the rent from such mercantile establishments. The subject property had been zoned as "RE" Multiple-family District from 1930 to about 1950 when the zoning was liberalized to the extent of allowing in said district the construction of multiple level parking garages without store fronts on the street and with certain other qualifications and limitations. [The full regulations are set forth in Parking Facilities, Inc., v. City of Miami Beach, Fla. 1956, 88 So.2d 141]. We glean from the record that in other areas of the city, notably in business districts, such multiple level parking garages were allowed with stores on the street level and facing the street. It was around this controversy that the argument revolved.
The Council finally concluded that it would not grant a permit for the construction of the multiple level garage with the stores along the street as it was contrary to the ordinance so far as it related to multiple level parking garages in "REE" Multiple-family Districts. Final action was taken rejecting the permit at the meeting of July 6th.
Inasmuch as the chronological events occurring subsequent to that time have a significant and material bearing upon the conclusions which we reach in this litigation, *170 we find it expedient to note: (1) the events in chronological order arising in the eminent domain proceedings instituted by the City of Miami to acquire this property for public parking area (the suit with which we are primarily dealing in this opinion) and (2) the events in chronological order arising out of the action in equity seeking to declare the subject ordinance restricting the use of the plaintiffs' property as above noted to be unreasonable, arbitrary, confiscatory and unconstitutional; enjoining and restraining the City from enforcing said zoning ordinance against the property of the Rotts insofar as the construction of a structure as shown by the plans and elevations attached to the complaint or a structure of similar utility including multiple level parking garage (the structure referred to was one for multiple level parking of automobiles with stores along the street); enjoining and restraining the prosecution of the condemnation proceedings pending the determination of the equitable action and for general relief. In chronological order these events are:
1. July 6, 1955, application for permit to construct the multiple level parking garage with stores on the ground floor rejected by the Council.
2. October 26, 1955, petition for condemnation of the land in controversy filed by the City of Miami Beach in the Circuit Court of Dade County.
3. November 15, 1955, answer filed in condemnation suit by defendants Rott.
4. March 21, 1956, complaint for injunction filed by the Rotts against City of Miami Beach to enjoin enforcement of zoning ordinance as to subject property and to allow construction of multiple level parking garage with stores along the street.
5. June 6, 1956, notice was served on Rotts' attorneys of application for trial of condemnation suit on July 5, 1956.
6. June 22, 1956, answer of the City of Miami Beach to injunction complaint.
7. June 29, 1956, order denying temporary injunction to restrain condemnation suit.[1]
8. July 2, 1956, motion of Rotts' attorney for continuance of condemnation suit.[2]
9. July 5, 1956, order denying motion for continuance of condemnation suit.[3]
July 5, 1956, order determining that the City had the right to condemn the lands and that the condemnation thereof is necessary *171 and proper in the condemnation suit.
10. July 10, 1956, verdict of the jury fixing award of compensation in the condemnation suit.
11. July 12, 1956, final judgment of the court[4] in the condemnation suit.
12. August 20, 1956, order denying motion of City of Miami Beach for summary final decree[5] in the injunction suit.
The condemnation case is now before us on an appeal from the final judgment and the Rotts present three questions for determination, viz.:
1. Did the trial court err in denying the motion for continuance pending the determination of the issues on the equity suit?
2. Did the trial court err in finding in favor of the City on the question of the necessity of taking and the good faith of the City?
3. Did the trial court err in admitting certain evidence of expert witnesses concerning a lease and in refusing to allow defendants' witness McCune to give certain testimony relating to leases on comparable property as a basis for establishing market value?
Before entering upon a discussion of the three principal issues in this case and as a preliminary thereto, this Court in the case of Parking Facilities, Inc., v. City of Miami Beach, supra, upheld the reasonableness and constitutionality of the very ordinance we are dealing with in this case as it related to certain other property in the City of Miami Beach. The question raised in that case was the identical question raised before the City Council at its meeting on July 6 hereinabove alluded to, and that was that it was unreasonable, arbitrary, capricious and confiscatory to allow the construction of a multiple level parking garage in hotel and apartment districts but at the same time and in the same ordinance prohibit the use of the ground floor for mercantile establishments of a defined and restricted character. While the decision in that case was filed January 8, 1956, it was not officially released until rehearing was denied September 13, 1956, about two months after the entry of the final judgment in the condemnation suit and nearly a month after the entry of the order of the trial court denying the motion for summary decree in the chancery case. In Parking Facilities, Inc., v. City of Miami Beach, supra [88 So.2d 142], we had this to say with reference to the reasonableness of the ordinance which is the basic subject matter of all of this litigation:
"* * * There is nothing in the record to indicate that the ordinance under question deprives the plaintiff of the beneficial use of its property. Forde v. City of Miami Beach, 146 Fla. 676, 1 So.2d 642. Not only does the record show that the parking of automobiles is one of the gravest problems faced by the City of Miami Beach but this Court judicially knows that such problem is one of the most pressing and serious confronting governmental bodies. The solution of this problem or anything which tends to solve it necessarily contributes to the general welfare. The construction of a parking garage as required in the ordinance in a multiple-family district is not detrimental to the district or inconsistent with the uses allowed therein but, on the contrary, is essential to *172 the maintenance of the integrity of such district. On the other hand, the use of a portion of the building for stores or other business enterprises would violate the integrity of the district and plant therein a growth which could well spread and destroy the character of the neighborhood. It would constitute spot zoning of the worst order, a practice which we and all other courts have universally condemned. Moreover, these zoning ordinances come to us with the presumption of validity. City of Miami Beach v. Hogan, Fla., 63 So.2d 493, and cases there cited. We are not authorized to substitute our judgment in matters of this kind for that of the constituted authorities of the City of Miami Beach so long as their actions are, as here, within constitutional limitations."
Having decided that the ordinance under attack was a valid and reasonable regulation of the City of Miami Beach, the very foundation of the equity suit is completely destroyed and the original action of the City Council of July 6 denying the application to build a multiple level parking garage with stores on the street was a valid, legal and justified act of the City Council of that City. Under the rule of stare decisis, Parking Facilities, Inc., v. City of Miami Beach is controlling here on that question. The foundation of the equity suit having been destroyed by the holding of this Court in Parking Facilities, Inc., v. City of Miami Beach, it naturally follows that the trial court in this case was not in error when he refused to grant the continuance.
Moreover, the motion for continuance was wholly inadequate and we think the learned trial judge in the companion equity case now being considered by us was altogether correct in his disposition of the motion for temporary injunction made in that case on the ground of lack of diligence alone.
There is another and very fundamental reason why we cannot agree with the contention of the appellants in this case concerning the matter of continuance. In 1953 the late Justice Mathews was the author of an opinion which, to use the vernacular, fits this case like a glove. City of Miami Beach v. Hogan, Fla. 1953, 63 So.2d 493, 495. By changing a few words the language in that opinion could be used in this. The Court there said:
"After the city had decided to acquire the property by the exercise of the power of eminent domain the landowner goes into a court of equity in an attempt to have the property rezoned, not because it wishes to erect a hotel, but because if it is rezoned for hotel use, the value will be greatly increased and the city will be compelled to pay the increased value brought about by rezoning in order to obtain the property for a public purpose.
"From 1930 until the institution of this suit the City of Miami Beach had grown from a population of about 6,000 to a population of 45,541. The landowner now seeks to reap the benefit of an unearned increment when the very growth and the development of the City of Miami Beach is due in large measure to the zoning ordinance which the landowner now seeks to change for her own benefit.
"The allegations of fraud are wholly insufficient and the question of necessity in the absence of bad faith or fraud rests wholly in the discretion of the city officials.
"The condemnation suit was instituted prior to the suit in equity and no reason appears why the landowner cannot litigate the questions of good faith and necessity in the condemnation suit, as provided by the law relating to eminent domain.
"If the Courts adopt the policy of substituting their judgments for that *173 of city officials, simply because of their refusal to rezone the property in accordance with the wishes of the landowner to increase the value of the land, they will eventually become the zoning boards for every county and municipality in the State."
We now turn to the second question. It can be disposed of with the observation that the conclusions reached by the lower court concerning the necessity of taking and the good faith of the City is established by the basic contentions of the appellants here. It was agreed at the hearing before the City Council and all along the line that the area in which this property was located was one of great traffic congestion. Obviously that was the basic reason prompting the desire of the appellants to construct a multiple level parking garage. It is no answer to contend that there was no necessity for taking because the owners were willing and had planned to provide better and even greater parking facilities. The owner could change his mind both as to whether he would build or what he would use the property for after he had built it. It could become a private enterprise subject to private control and used for private purposes. The finding of the City Council on the question of necessity is one which may not be easily or casually overthrown by the courts. It requires strong and convincing evidence of the most conclusive character to upset the findings of the elected officials charged with the responsibility of operating the city government in matters of this kind. There was no showing nor even allegations of fraud. Justice Mathews in City of Miami Beach v. Hogan, supra, very appropriately observed that "* * * in the absence of bad faith or fraud [the necessity of taking] rests wholly in the discretion of the city officials."
It is not necessary to labor the third point. Our careful scrutiny of the record in this case leaves no room to doubt that this case was thoroughly and correctly tried. The charges of the court were fair in all respects to both parties and the alleged error suggested by the third question, if in fact it was error, was inconsequential and harmless. Section 54.23, Florida Statutes 1955, F.S.A.
Affirmed.
TERRELL, C.J., and HOBSON, ROBERTS and THORNAL, JJ., and ROWE, Associate Justice, concur.
THOMAS, J., not participating.
NOTES
[1] In denying the application for the temporary restraining order the trial court very appropriately observed: "* * * said condemnation proceeding having been instituted in October, 1955 and the trial thereof having been set for July 5, 1956, and it further appearing that this cause was instituted on March 21, 1956, and the court being of the opinion that due diligence in the prosecution of this cause would have enabled the court to have tried and adjudicated the issues involved herein prior to the trial of said condemnation proceedings it is therefore Ordered, Adjudged and Decreed that plaintiff's application for injunction herein be and the same is hereby denied."
[2] The motion for continuance related the filing of the eminent domain proceeding; the later filing of the chancery action; that the chancery action is at issue and set for trial on August 17, 1956 "seeking a change in zoning to a classification that would permit the erection of the type improvement desired by defendants herein." (quoted language is taken directly from the motion for continuance) It is then alleged in the motion that if the Rotts are successful in the chancery action the value of the property would increase at least $2000 per foot.
[3] In this order the court denied the continuance and set the case for hearing on July 5, 1956 prior to the empanelling of a jury for the purpose of determining the issue of the necessity of taking. The order provided that if that issue were determined contrary to the contention of the Rotts "the trial will proceed at the time previously set for whatever issues are to be tried."
[4] The award was for $285,000 for the land and $14.250 attorneys' fees.
[5] After the condemnation suit was completed and the money paid into the registry of the court the City of Miami Beach amended its answer alleging such facts, attached supporting affidavits and moved for the entry of a summary final decree on the ground basically that having acquired the legal title to the land, the equity suit was terminated. (This order of the lower court was also appealed to this Court and is now pending and has been disposed of by an opinion of this date.)