108 So.2d 74 (1958)
BOARD OF COMMISSIONERS OF STATE INSTITUTIONS, a constitutional governmental agency of the State of Florida, Appellant,
v.
TALLAHASSEE BANK AND TRUST COMPANY, as Administrator cum testamento annexo, Estate of John G. Riley, deceased; Winifred Lively Wesson, Caroline Lively Carraway, and Emily G. Lively; Trustees of the Church of God, a Florida corporation; and Hyman Myers, Appellees.
No. A-288.
District Court of Appeal of Florida. First District.
December 23, 1958.
Rehearing Denied January 12, 1959.
*76 Richard W. Ervin, Atty. Gen., Ralph M. McLane, Asst. Atty. Gen., H. Rex Owen, Special Asst. Atty. Gen., for appellant.
Caldwell, Parker, Foster, Madigan, Oven & Moriarty, Tallahassee, for appellees Tallahassee Bank and Trust Co. as Administrator of the Estate of John G. Riley, deceased, Winifred Lively Wesson, Caroline Lively Carraway, and Emily G. Lively.
Leo L. Foster, Tallahassee, for appellee Hyman Myers.
Truett & Watkins, Tallahassee, for appellee Church of God.
THORNAL, Associate Judge.
Appellant Board of Commissioners of State Institutions, which was petitioner below in an eminent domain proceeding, seeks reversal of a final judgment entered pursuant to a jury verdict fixing the amount of compensation and attorneys' fees to be paid to the appellees, who were the landowners.
Numerous points are cited as grounds for reversal. In the ultimate, however, our conclusion must turn on the contention of appellant that the trial judge committed error in permitting evidence of values of appellees' property for uses otherwise prohibited by an existing municipal zoning ordinance.
In its preliminary stages this cause has been before this court on two prior occasions. Board of Commissioners of State Institutions v. Tallahassee Bank and Trust Company, Fla.App. 1958, 100 So.2d 67; Fla. App. 1958, 101 So.2d 411; certiorari denied without opinion by Supreme Court, Fla. 1958, 101 So.2d 817.
Appellant Board of Commissioners of State Institutions hereinafter referred to as the "State Board" is an agency of the state government created by constitutional provision. Article IV, Section 17, Constitution of Florida, F.S.A. It consists of the Governor and chief administrative officers of the state government, otherwise known as the Cabinet. Article IV, Section 20, Constitution of Florida. It is obvious, therefore, that the personnel of this State Board consists of officials occupying the highest echelon of the executive branch of the state government. The State Board is endowed with the power of eminent domain by statute. Section 73.22, Florida Statutes, F.S.A. By its petition the State Board sought to condemn five parcels of privately owned property for the use of the State in the expansion and development of the so-called Capitol Center. The lands sought to be acquired were identified by parcel number and ownership as follows: Parcel No. 1 owned by the Church of God, hereafter called the Church; Parcel No. 2 owned by the Lively heirs; Parcels Nos. 3 and 4 owned by Myers; and Parcel No. 5 owned by the Riley Estate. All of the land is located within the area generally described *77 as the Capitol Center. It is in close proximity to the State Capitol Building and other buildings housing State agencies within the Center. At the time of the filing of the petition for condemnation all of the parcels involved here were subject to restrictions as to use. The restrictions were imposed by a municipal zoning ordinance of the City of Tallahassee. The Church property was zoned as Residence "A". The other four parcels were zoned as Residence "B". In general, uses permitted in Residence "A" district were residential buildings for occupation by not more than four families, customary home occupations, offices of professional persons residing on the premises, churches and public office buildings. Residence "B" district permitted the same uses as "A" except there was no limitation as to the number of family units in apartment houses for residence purposes. Residence "B" also permitted automobile parking lots. The involved property owners filed separate answers to the petition for condemnation. They did not deny either the power to condemn or the need for the taking. They assaulted the validity of the zoning ordinance to the extent that it would be binding evidence of restrictions on the use of their property in relation to the value thereof and the ultimate compensation to be paid to the owners. In the petition the City of Tallahassee had been named a respondent, allegedly in order to determine the extent of any tax claims against the lands.
By their answers the property owners in sum alleged that from the beginning the City and the petitioner actively collaborated in the planning and passage of the zoning restrictions for the specific purpose of limiting all privately owned property within the Capitol Center area to residential uses. It was alleged that the action of the City in this regard was an arbitrary and unreasonable restraint on the use of private property tantamount to confiscation. They asserted that, in imposing these arbitrary restraints, a prime objective sought by the City at the insistence of the petitioner was the prevention of the construction of valuable improvements which would increase the cost of acquisition by the State at such time as it might seek to take the property for State purposes. It was further alleged that even assuming that the zoning restrictions were within reason at the time of the passage of the ordinance, nevertheless, changed conditions over the years had made the application of the zoning measures unreasonable, arbitrary and confiscatory as applied to the respective parcels of land at the time of the filing of the condemnation petition.
The trial judge had the view that as a matter of pleading the answers constituted a collateral assault on the validity of a municipal ordinance. He sustained a motion to strike the answers. However, he granted to the appellee property owners permission to file a cross-claim for declaratory relief seeking an adjudication of the operation, validity and application of the zoning ordinance as applied to the subject of the determination of the value of the property involved.
The appellant State Board by motion sought a dismissal of the cross-claims which the appellees had filed pursuant to the court order. The trial judge denied the motion to dismiss and an accompanying motion to strike. Viewing his action in this regard as being purely interlocutory, we denied certiorari when an effort was made to obtain review of this order. Board of Commissioners of State Institutions v. Tallahassee Bank and Trust Company, Fla. App. 1958, 100 So.2d 67.
The trial judge then proceeded, at a pre-trial hearing, to determine whether at the trial of the condemnation suit evidence of value would be restricted to uses limited by the zoning ordinance or whether evidence of value for less restrictive uses would be in order. After listening to extensive testimony and argument of counsel, the trial judge entered a comprehensive order containing detailed findings of fact and conclusions of law. His ultimate conclusion, *78 however, on the critical point, simply was that the property owners would be "entitled to offer evidence to establish and to receive as compensation for the taking the fair market value of the property taken unimpaired and unrestricted by the zoning ordinances of the City of Tallahassee limiting the uses of property in Residence `B' and Residence `A' areas, but subject to the restrictions upon the uses of property in `Business A areas'. The jury will be appropriately instructed."
Review of this latter order was sought by the appellant. Again we declined review. Board of Commissioners of State Institutions v. Tallahassee Bank and Trust Company, Fla.App. 1958, 101 So.2d 411, 412. In our opinion declining, at that point, to disturb the order of the trial judge we stated our conviction that the order was "nothing more than an interlocutory pre-trial order governing aspects of evidence as to value that will be allowed to go to the jury when the case is tried". Being dissatisfied with our order last announced, the present appellant sought review by certiorari in the Supreme Court of Florida. Certiorari was denied by that court. Board of Commissioners of State Institutions v. Tallahassee Bank and Trust Company, Fla. 1958, 101 So.2d 817.
The sum of our prior rulings has been that the petitioner, who is now appellant, was asking us to interrupt the orderly processes of a condemnation suit by reviewing mere interlocutory steps in the trial procedure. Howard Johnson, Inc., of Fla. v. State Road Department, Fla. 1956, 90 So.2d 306. We have declined to do this but have consistently reserved for future determination any grievance which the appellant might have had as a result of the alleged irregularity in the trial proceedings. That time has now arrived.
We are faced squarely with the necessity of determining the correctness of the various rulings of the trial judge which have been assigned as error. The verdict of the jury awarded compensation to the property owners somewhat in excess of the values testified to by the appellant's expert witnesses. By the same token the verdict was for amounts somewhat less than values testified to by witnesses for the appellees. Being dissatisfied with the amounts awarded by the jury, the appellant seeks reversal of the judgment entered pursuant to the jury verdict which, in addition to compensation for the property, fixed the amount of fees to be paid to attorneys for the several property owners. Before proceeding to the contentions submitted by the parties we think it necessary in the interest of coherence and clarity to epitomize additional factual bases upon which the assault on the zoning ordinance was constructed by the appellees.
At the pre-trial hearing on the cross-claims filed by the appellees the evidence revealed that beginning about 1945 the idea of the development of a Capitol Center in the City of Tallahassee was given serious consideration by high level state officials. A town planner named A.D. Taylor was employed by the State to plan and advise the state officials in the development of the project. Simultaneously, the same Taylor was employed by the City to make studies and recommendations for a comprehensive zoning plan. He made his report both to the State and City officials. The State and City shared in paying the expense. A long-range plan for a Capitol Center designed to meet the needs of the State for many years was perfected. The plan contemplated that at the earliest possible time the State should acquire private property within the Center which would be needed in the foreseeable future, although not then immediately needed for State purposes. It was reported to the State by the planning experts that unless measures were taken to prevent it, there would be an increased utilization of private property for business purposes within the Capitol Center area on the basis of the indicated rapid growth and expansion of the City. These business uses of the property within the Center unless restrained in some fashion would *79 seriously increase costs of acquisition when and if the State ultimately asserted its power of eminent domain.
In 1947, in reporting to the Florida State Improvement Commission, the statutory predecessor of the present Florida Development Commission, and also to the Board of Commissioners of State Institutions, Mr. Taylor suggested the following:
"Pending the time that private property is purchased for this proposed Capitol Center development, zoning regulations should be placed upon this property to restrict it against any improvements that are not in keeping with the permanent development. Such zoning regulations will also prohibit the construction of business and commercial buildings, the subsequent purchase or condemnation of which will involve unnecessary and abnormal expenditures." (Emphasis supplied.)
It will be noted that the State's own planner, who was at once also the City's zoning expert, at the outset recommended the imposition of municipal zoning regulations which would prohibit the construction of business and commercial buildings on the privately owned property located within the perimeter of the contemplated Capitol Center.
Further evidencing the official attitude on the subject is an excerpt from the minutes of the Trustees of the Internal Improvement Fund, a State agency which also consists of the Governor and various Cabinet members. At a meeting on August 19, 1952, the Trustees adopted a resolution appropriating a substantial sum of money for the acquisition of various parcels of land within the Capitol Center. A recital in this resolution proclaims the conscious awareness of the State officials that the continued curtailment on the use of privately owned property by the zoning restrictions and the delay in acquisition by the State was working a hardship on private property owners. Illustrative of the official attitude is the following recital from the resolution last mentioned:
"Whereas, the City of Tallahassee has zoned and restricted the use of private property lying within the area, such restrictions being designed to further the program of using the Capitol Center area for state purposes, however, such restrictions have resulted in curtailing the uses to which private owners could put such properties, and the further delay in acquiring such property for state purposes works a hardship on such private owners; * * *." (Emphasis supplied.)
The foregoing are merely illustrative of similar unequivocal statements on the subject which literally permeate the State's records since 1947. The documentary evidence was so overwhelming that it would be logically impossible to arrive at any conclusion save that the State and City officials purposely employed every means available to restrict the private development of the Capitol Center.
Minutes and records of various State agencies, such as, the Trustees of the Internal Improvement Fund and the Florida State Improvement Commission as well as the appellant Board were introduced in evidence by the landowners and the contents imputed to the petitioner. We note that the appellant makes no issue on the correctness of the ruling of the trial judge charging the appellant State agency with the evidentiary weight of these records of coordinate agencies of the State government.
On its own part, as an obvious complement to the official action of the State government, the City of Tallahassee in 1948 adopted Ordinance No. 452 setting up a comprehensive zoning plan for the entire city. Insofar as the Capitol Center area was concerned, the Taylor recommendations were followed.
At the pre-trial hearing the appellee property owners presented evidence consisting *80 of maps, plats, charts and the testimony of real estate experts as well as former city officials regarding the present and former uses to which the land in question could be put. They also revealed the negotiations and collaboration between city officials and state officials in imposing the restrictive zoning provisions on the property. The evidence shows that all the parcels are located within close proximity to busily traveled thoroughfares, existing state office buildings, business and industrial enterprises, an athletic field, the county jail, a farmers market building, various warehouses, an electric substation, the municipal water plant, a parking lot, a public school, and few, if any, single family residential structures.
On the basis of the evidence above summarized the trial judge arrived at two significant conclusions. In the first place, he concluded that the device of zoning had been employed and applied to the parcels of land involved for the purpose of preventing the development and utilization thereof for commercial uses in order to avoid an increase in the cost of acquisition at such time as the State should move to acquire the land. In the second place, he concluded that assuming the validity of the ordinance at the time of its passage, nevertheless, as evidence of the use value of the property at the time of the filing of the condemnation suit, the ordinance had become an arbitrary and confiscatory restriction. He then concluded that on the basis of the evidence and undisputed testimony, the highest and best use of the property would be those uses permitted in a Business "A" zoning district. He announced as stated in the forepart of this opinion that at the trial he would permit evidence on value of uses allowed in a Business "A" zone.
We think it proper here to emphasize the undisputed nature of the testimony submitted to the trial judge at the pre-trial hearing. The appellant State Board did not offer a single witness to dispute the testimony of the property owner witnesses with regard to the fair and reasonable use value of the subject property. No effort whatever was made to justify the continued application of the restrictive provisions of the zoning ordinance. The State's own records were clear and unequivocal on the subject of the preconceived concept of restraining the development of private property in the Capitol Center area by the use of zoning devices. The testimony of former city officials, all identified as prominent professional and business men in the community, was equally clear and unequivocal. They positively stated that the municipal officials at all times cooperated and collaborated with the state officials in planning and constructing the Capitol Center.
By its brief the State Board makes little effort to question the correctness of the testimony submitted by practically all of the witnesses on both sides. The effect of this evidence simply was that the highest and best use of the subject property would be for purposes allowed in a Business "A" zone. The briefs of the appellant are likewise significant in their failure to dispute the assertions of the appellees' witnesses that the subject zoning ordinance was the product of purposeful collaboration between the city and state government. Their attempt to obtain a reversal as we shall see from their contentions is grounded primarily on procedural grounds.
As we now proceed, let us retain in our thinking the actual ruling of the trial judge which is here under scrutiny. On the basis of the record presented to him, he concluded that while he had no power to rezone a particular area of the city, he did have the judicial authority to determine the nature of the evidence that would be permitted to show the market values of the subject land regardless of the particular provisions of the ordinance as applied to this land.

Contentions of Parties
To support reversal, the appellant has the view that after a condemnation petition *81 is filed, a property owner is thereby absolutely precluded from assaulting the restrictive provisions of an existing zoning ordinance. It is asserted that the procedure followed in the instant case consisted of an improper collateral attack on a prior existing ordinance. It is contended that the trial judge undertook to explore the motives of the municipal council in the adoption of the ordinance and that under applicable authority the motives of members of a legislative body cannot be brought into question in order to invalidate its enactments. Appellant further contends that in permitting evidence of uses other than those allowed by existing zoning ordinances, the trial judge should have submitted also to the jury the question of whether there had been a showing of a reasonable probability that the zoning ordinance would be changed to allow such uses in the foreseeable future.
Appellant further contends that the record shows that the appellees were guilty of laches in urging their objections to the validity of the zoning ordinance. Finally, it is asserted that in actuality the ordinance was valid, that the verdict of the jury is excessive and that the allowances for attorneys fees were out of reason.
The sum of the contentions of the appellees simply is that they take issue with the appellant on the major points. They assert that in all respects the rulings of the trial judge are legally sound and that the ultimate verdict of the jury was just and well supported by the evidence.

Attack on Zoning After Condemnation Instituted
One of appellant's prime points is that the filing of a condemnation suit ipso facto exclusively precludes any attack by a landowner upon the validity of zoning regulations. We do not find that the decisions relied upon support such a comprehensive rule. Appellant refers us to City of Miami Beach v. Hogan, Fla. 1953, 63 So.2d 493, and the companion case of City of Miami Beach v. Elsalto Real Estate, Inc., Fla. 1953, 63 So.2d 495. We also had a similar situation in Rott v. City of Miami Beach, Fla. 1957, 94 So.2d 168. In the cited cases the failure of the property owners to assault the validity of the zoning ordinance for many years and not until the municipality had instituted eminent domain proceedings was considered as an element in the factual situation presented by those cases to justify denial of relief sought by the landowners. The mere fact that the attack on the validity of the ordinance as applied to particular and being condemned is not made until after eminent domain proceedings are instituted does not in our judgment automatically bar the assault on the effect of the ordinance as a restriction on use value in the eminent domain suit. While such delay may under certain circumstances have evidentiary value to discredit the claim of invalidity and support the conclusion that the zoning restrictions are valid, we see no justification at all for concluding that delay alone will bar the property owner from questioning the applicability of the zoning limitations after condemnation proceedings are filed. As a matter of fact, in its brief at one point on the subject of laches, the appellant concedes that "while the Hogan case, supra, does not assert that laches is a bar in such an instance the long acquiescence did play an important part in the court's decision."
It appears to us that it would be totally unjustifiable to hold that the condemning authority could rely on the restrictive provisions of a zoning ordinance to de press land values and in the same litigation deny to the property owner an opportunity to defend himself and his property against the asserted ordinance on the ground of its alleged invalidity. As we shall see, there are numerous authorities to support the position of the trial judge. In the ultimate he merely held that in a condemnation proceeding it is proper to permit evidence of values for uses not otherwise permitted by an existing zoning ordinance. Such evidence is allowable provided, as here, there *82 is a showing that if literally applied the zoning ordinance would result in an arbitrary and unreasonable restraint on the use of property and that there is a reasonable probability that in the foreseeable future the ordinance will be changed to allow the more liberal uses.

Collateral Attack on Ordinance
Another major point assigned for reversal is the contention that the procedure followed by the trial judge made possible an unauthorized collateral attack on the municipal zoning ordinance. Here again appellant would seek to gain the advantage of the restrictive provisions of the zoning ordinance but deny to the property owners the right to question the validity of the ordinance for such purposes in a condemnation suit. In the proceeding below the trial judge had the view that the issues could not be raised by answer but that the property owners could assault the applicability of the ordinance in the instant case by cross-claim directed against the appellant and the City of Tallahassee, which was a co-defendant.
In our decision in 101 So.2d 411, supra, we had the view that the cross-claim procedure resulted in nothing more than a pre-trial order governing aspects of the evidence which would be admitted at the trial of the main action. The net result of the attack upon the zoning ordinance which produced the ruling of the trial judge now under assault simply was that, as applied to the particular property, the zoning ordinance unreasonably restricted evidence of value by limiting the use of the land to so-called residential developments, whereas, the land logically and reasonably had a more valuable use potential for limited business purposes.
We pointed out above that the position of the landowners was conclusively established by the testimony and other evidence presented to the trial judge. There was none to the contrary. The point apparently overlooked by the appellant is that the judge below did not undertake to rezone the property or cast aside the zoning ordinance. He let the ordinance go to the jury to evidence the uses authorized thereby. However, he also permitted evidence of values for uses under the most restrictive business district provisions of the ordinance. Such business uses incidentally were assigned by the witnesses for all of the parties, including those for the appellant, as the highest and best uses for which the property was adaptable.
Appellant mentions four cases from other jurisdictions announcing the general proposition that the validity of a municipal ordinance cannot be subjected to a collateral attack. We think it unnecessary to labor this rule or the cases cited. In the first place in the instant case any assault on the validity of the ordinance as such was a direct assault so far as the City of Tallahassee was concerned. This is so for the simple reason that the City of Tallahassee was already a party to this cause and was named a co-defendant and was accorded a full opportunity to defend its ordinance against the assault. Moreover the position of the appellee property owners simply is that they were not leveling a general attack on the validity of the ordinance. They merely questioned, as they had a right to do, the application of the restrictions of the ordinance to the particular property here involved as a limitation on evidence as to value. Incidentally the City of Tallahassee as such is not a party to this appeal.

Reasonable Probability of Change
This brings us to the next point assigned by the appellant. It is contended by the State Board that if the trial judge in a condemnation proceeding on the basis of all the evidence holds the view that a zoning ordinance is unreasonably restrictive as to the uses permitted with reference to the land involved, then the judge may submit to the jury the question of the reasonableness of the restrictions, evidence of values for less restrictive uses, as well as evidence as to the reasonable probability of a change in the zoning ordinance within the *83 foreseeable future. The appellant asserts in connection with this proposition that the question of a reasonable probability of a change in the zoning ordinance is one for the jury to whom the trial judge should assign the problem under appropriate instructions. Appellant asserts that the trial judge failed to do this. We are referred to City of Austin v. Cannizzo, 1954, 153 Tex. 324, 267 S.W.2d 808, which was discussed by us in some measure admittedly by way of dictum in our opinion in 100 So.2d 67. We had the view that the rule announced by the Texas Supreme Court in the Austin case was sound and should be followed. We are not alone in this view. The Texas decision has already been accepted as authoritative by the District Court of Appeal of Florida, Second District, in Swift & Co. v. Housing Authority of Plant City, 106 So.2d 616. We think two propositions militate against the position of the appellant on this point. In the first place we consider the necessity for a jury determination of a reasonable probability of a change in the zoning ordinance in the foreseeable future. The record in the instant case reflected almost conclusively and certainly beyond dispute that the existing zoning ordinance imposed unreasonable and discriminatory restrictions on the use of the particular property involved. Indulging the established presumption that public officials will do their duty, we think that this record beyond all doubt would have sustained a judicial conclusion as a matter of law that the municipal officials would within the foreseeable future adjust the requirements of the ordinance so as to liberalize the uses to which the property might be put. We think under such circumstances the so-called reasonable probability of a change in the ordinance ceases to be a factual conclusion alone for jury determination. Like any other conclusion it becomes one of law for determination by the judge if the factual aspects of the matter are so clear and indisputable that only one legal conclusion can be reached.
There is, however, another equally vital weakness in the appellant's assertion that the judge should have submitted the question to the jury under appropriate instructions. We have examined the charges which the judge gave to the jury. There is no charge with reference to the necessity for a jury finding on the matter of a reasonable probability of a change in the ordinance. However, on several occasions the trial judge specifically inquired of counsel for all parties, including appellant, whether his charges had adequately covered the matters at hand. The judge asked them whether they had any further instructions or whether they objected to any instructions given. In no instance did the attorneys for the appellant or anyone else request additional instructions. In no instance did they object to the instructions which the judge did give to the jury. In no instance did they request the trial judge to advise the jury on this particular matter of reasonable probability of change. Without delving any further into the details of the procedural aspects of the situation, we think that the appellant is not now in a position to urge the objection for the first time in this court. See Rule 2.6, Florida Rules of Civil Procedure, 31 F.S.A.
In addition to City of Austin v. Cannizzo, supra, our own research has produced a consistent line of modern authorities which support the position of the trial judge and the position which we herewith announce that even though an existing municipal zoning ordinance may prohibit the use of property for stated purposes at the time of condemnation, nevertheless, if there is a reasonable probability that the ordinance may be changed or an exception made in the foreseeable future, then the value for such use as may be included in the amendment or exception may be considered. Vol. 1, Orgel on Valuation Under Eminent Domain, 2d ed., Sec. 34, p. 167; Andrews v. City of Dallas, Tex.Civ.App., 232 S.W.2d 753; Long Beach City High School District of Los Angeles County v. Stewart, 30 Cal.2d 763, 185 P.2d 585, 173 A.L.R. 249; Vol. 4, Nichols on Eminent Domain, 3d ed., Sec. 12.322, p. 141, and 1958 Supplement; State *84 Roads Commission v. Warriner, 211 Md. 480, 128 A.2d 248; State by State Highway Com'r v. Gorga, 45 N.J. Super. 417, 133 A.2d 349; In re Armory Site in Kansas City, Mo., 282 S.W.2d 464. See also Swift & Co. v. Housing Authority of Plant City, supra.
While not exhaustive the foregoing is an illustrative list of the authorities which adhere to the rule that it is appropriate in an eminent domain proceeding to demonstrate the reasonable probability of a change in zoning restrictions in order to justify evidence of a use value different from those prescribed by the ordinance in existence at the time of the institution of the condemnation proceeding. This rule apparently is now well grounded in the cases typified by the jurisdiction above mentioned. We think that it has merit. It is consonant with a just disposition of the situation existing between the condemning authority and the property owner whose land may have been unreasonably restricted purely for the benefit of the agency of the government seeking to acquire the private property as was the case here. We think further that the rule is well supported in law. It produces a conclusion consistent with the requirements of "just compensation" for private property taken for a public purpose as announced by Section 12, Declaration of Rights of Florida.

Laches
Appellant contends that the appellees have been guilty of laches in assaulting the ordinance. We think there is less merit to this point than to some of the others relied upon for reversal. An aspect of laches necessary to preclude a party from obtaining relief otherwise justified is that his adversary must have suffered some injury or the party asserting a right must have gained an unconscionable advantage as the result of the passage of time. Bear in mind that we here consider laches and not the arbitrary proscriptions of a statute of limitations. Viewing the record before us, it seems to us that the condemning authority has gained advantage instead of suffering a disadvantage. In actuality the effect of the ordinance since the date of its passage in 1948 has been to restrict the use of the appellees property in such fashion that no valuable buildings have been constructed upon any of the parcels. The appellees have, of course, suffered the resultant loss of income. Now in finally exercising the power of eminent domain, which at the outset ten years ago it obviously intended someday to exercise, the State is saved the added expense of paying for what otherwise might have been valuable improvements on the land, if it had been zoned for its highest and best use. This contention by the State with regard to laches suggests to our thinking that in actuality the plan of restrictive zoning which was the product of collaboration between the State and the City did in fact accomplish the objective originally contemplated. The land has been held undeveloped under the restrictive prescriptions of the City ordinance. It is now being subjected to condemnation for public purposes without the addition of valuable private improvements which could have been constructed absent the ordinance. In its response to the cross-claim appellant merely asserted that the landowners were guilty of laches by failing to attack the ordinance until after the filing of this suit. They produced no evidence whatever to show any change of position or detriment suffered by the State as a result of any delay on the part of the property owners. With reference to one parcel, the Myers tract, it was shown that over a period of time a commercial enterprise that would have produced a substantial income could have been established on the land but for the refusal of the municipality to accord zoning relief. The assertion of laches as a bar to appellees' attack on the ordinance has no merit.

Motive
We come now to consider the contention of the appellant that the trial judge improperly explored the motives of the members of the City Council in analyzing the history and effect of the zoning ordinance. Many cases are cited to support the *85 broad general concept that the courts will not pierce the language of a legislative enactment in an effort to determine the motives of the legislative body that produced it. This rule makes sense. A good law may be the product of questionable motives. City of Miami Beach v. Schauer, Fla. 1956, 104 So.2d 129. At the same time a highly unreasonable and arbitrary enactment may be inspired by legitimate motives. We are not here confronted with any evidence of fraud. There is abounding evidence of excessively exuberant civic enthusiasm. However, we are not inclined to commend an arbitrary exercise of the police power by one branch of government in order to pave the way for a less expensive exercise of the power of eminent domain by another branch to the detriment of the private property owner. Even when adorned with a mantle of civic improvement we cannot conceive of a policy of government afflicted with greater potentials for abuse of the private citizen. The only difficulty with the desires of all of the officials as well as the effort which they put forth to effectuate their wishes, simply was that out of their ambition to construct an attractive Capitol Center that would be a credit to all of Florida they imposed upon certain private property owners in the involved area the burden of suffering what amounted to an arbitrary and unreasonable restraint on the use of their property. In actuality to the extent that the ordinance denied to the property owners just compensation, when their property was taken for public use, the enactment contravened Section 12, Declaration of Rights of Florida.
Be that as it may, we are not impressed that the trial judge really undertook to ascertain the motives of the various former city officials, who to their own credit frankly testified before the judge that the purpose of this ordinance was in actuality to restrict the use of the property. The arbitrary and unreasonable aspect of the ordinance as applied to the property of the appellees was evident from the testimony of the experts with reference to the highest and best use values, as well as from the public records of the appellant and other state agencies that have been involved in the development of the Capitol Center. A determination of motive was not the objective of the trial judge. His investigation had to do with the reasonableness of the ordinance as applied to appellees' property.
There is another rule of law, however, which appears to us to be a complete answer to the position of the appellant with regard to motive. All parties seemed to overlook it. However, it supports the conclusion of the trial judge. We have reference to the rule, recognized universally so far as we know, that the adoption of an ordinance is an exercise of municipal legislative power. The adoption of a zoning ordinance is an exercise of the police power. It is well established that in the exercise of this function a city cannot legislate by contract. In other words, a municipality has no power to bind itself and its citizens to a contractual arrangement or obligation to exercise its police power in a particular fashion. Admitting the recognized economic value of the State Capitol to the City of Tallahassee and admitting the attractiveness of the so-called State payroll as an almost essential corpuscle of the economic life blood of the community, nevertheless, the City is not endowed with the authority even under such attractively impelling circumstances to bind itself to exercise a power of government to the detriment of individual citizens. Hartnett v. Austin, Fla. 1956, 93 So.2d 86.
This record sustains the additional conclusion that regardless of what the motive of the city officials might have been when the ordinance was originally adopted or re-affirmed from time to time, the indisputable fact is evident that at the time of the filing of the condemnation suit the application of the ordinance to the property of the appellees was an unreasonable and literally confiscatory restraint on the use *86 of private property. In sum, we are not here concerned with motive. We are concerned merely with the product of discriminatory action by the public officials regardless of motive. The appellant has failed to refer us to any authorities that would justify a reversal on this point. We are here more concerned with the real purpose, the object and the operative effect of the zoning plan than we are with the motive of those who brought it into being.
The conclusions last above announced are further supported by the many decisions which condemn the arbitrary adoption of a zoning ordinance for the sole purpose of depressing land values preliminary to eminent domain proceedings. Cf. In re Inwood Hill Park, in Borough of Manhattan, City of New York, 230 App.Div. 41, 243 N.Y.S. 63, affirmed 256 N.Y. 556, 177 N.E. 138; Grand Trunk Western R. Co. v. City of Detroit, 326 Mich. 387, 40 N.W.2d 195; Long v. City of Highland Park, 329 Mich. 146, 45 N.W.2d 10; Robyns v. City of Dearborn, 341 Mich. 495, 67 N.W.2d 718; State ex rel. Tingley v. Gurda, 209 Wis. 63, 243 N.W. 317; Kissinger v. City of Los Angeles, Cal. App., 327 P.2d 10.

Excessive Verdicts
We come now to the contention of the appellant that the verdict of the jury fixing the amount of the award for the several parcels was excessive. We are frankly not impressed by this contention. On the contrary, we cannot fail to take notice of the preliminary effort that was made by the State Board to acquire the several parcels involved on the basis of a value fixed for "single family residence purposes" when all of the real estate experts, including the appellant's own witnesses, readily admitted from the witness stand and everywhere else reflected by the record, that the property had little or no value for single family residence purposes. A further detailed examination of the record reflects the testimony of the expert witnesses for all parties including the appellant that the highest and best uses to which the land might be put were those within the limits of the Business "A" classification. There was no real dispute between the experts as to what these uses might or could be. The only real difference between the experts did not have to do with proper use of the land but merely as to value of the land for such uses. Admittedly the State had attempted to purchase all of the property of the appellees as zoned for "single family residences" for a total price of $52,635.50. The same appraisers representing the State testified as expert witnesses that in their view within the limits of Business "A" district restrictions the same property was worth $105.728. The experts who testified for the appellee property owners testified that in their view the property was worth for the same uses $238,685. The jury, sitting as a totally impartial arbiter, after having the benefit of a view of the land, did not agree either with the minimum value placed by the appellant's experts or with the maximum value placed by the experts for the appellees. The jury awarded a total sum of $178,000 for all five parcels. We do not find in the record any basis that would justify us as an appellate court in upsetting this factual judgment of the jury. We have the notion that an honest and intelligent jury under our system is probably the best and safest arbiter of factual differences between parties litigant. When correctly instructed as to the law, after hearing all of the facts, it has been our experience, subject to rare exceptions, that such a jury will come pretty close to deciding a case of this nature correctly.

Attorneys Fees
Along this same line the appellant contends that the attorneys fees allowed by the jury to the property owners to be paid to their attorneys are also excessive and should not be taxed as costs. We think from an examination of the record that the fees here allowed may have been a little high. However, they were adequately *87 supported by the testimony of competent and experienced witnesses for the appellees and were not disputed by any evidence offered by the appellant. Here again, our experience has indicated that jurors are not customarily unjustifiedly generous in fixing fees to be paid to an attorney. The jury in this instance did not take the maximum suggested by witnesses for the appellees, although they might have been justified in doing so. We cannot conclude that the amount of the fees is shockingly excessive. The fees were properly taxed as costs in the trial court under the provisions of Section 73.16, Florida Statutes, F.S.A.

Validity of Ordinance
There is one final contention submitted by the appellant which we mention in order to forestall any notion that we have overlooked it. Some effort is made in the briefs to argue the point that regardless of any showing to the contrary, the zoning ordinance as applied to the property of the appellees is perfectly valid. We think that what we have said rather adequately disposes of this contention. As a matter of fact, the trial judge did not by his pre-trial order declare the ordinance to be invalid as a legislative enactment. He merely held that as to the property of the appellees and in view of the uncontroverted evidence submitted to him, the ordinance unreasonably restricted the use of the property to the detriment of the appellees in a showing of value for condemnation purposes. It is impossible for us to conclude that the trial judge could have ruled any other way. Every possible opportunity was available to the appellant and to the defendant City of Tallahassee to support the manner in which this ordinance was sought to be applied by them. We are compelled, in defense of our own judgment, to point out that the record is totally devoid of any affirmative evidentiary effort whatsoever on the part of either agency of the government to sustain the application of the ordinance against the attack. This being the case the trial judge had no alternative to the judgment which he entered and we are without alternative to its affirmance.
The appellant State Board is not to be left without commendation for its justifiable effort to acquire the subject property for public use at the least possible expense to the public treasury. This is their logical and proper function. However, we cannot disregard the fact that they are here exercising one of the three highest powers of sovereignty. We have not yet reached the point where the rights of an individual in the enjoyment of his private property are to be subordinated to the demands of government except upon payment of just compensation in an orderly proceeding conducted in a fashion consistent with the requirements of due process of law. Our careful examination of the splendid briefs and supporting appendices, as well as the actual record itself, leads us to the notion that the position of the appellant has been fairly and properly considered at all levels in this litigation. The rights of the appellees have been properly evaluated and all of the parties have been fairly and justly heard according to law.
This being the situation in the ultimate which is presented to us, we can find no justification for disturbing the verdict of the jury and the ensuing judgment entered thereon by the trial judge. The judgment is, therefore 
Affirmed.
STURGIS, C.J., and CARROLL, DONALD, J., concur.