MARVEL DAVIS *et al.*, Plaintiffs-Appellants, v. KIRK BROWN *et al.*,
Defendants-Appellees.

Second District   No. 2—04—0397

Opinion filed April 13, 2005.

Timothy P. Dwyer, of Law Office of Timothy P. Dwyer, of St. Charles, for appellants.

Lisa Madigan, Attorney General, of Chicago (Gary S. Feinerman, Solicitor General, and Carl J. Elitz, Assistant Attorney General, of counsel), for appellees.

PRESIDING JUSTICE O'MALLEY delivered the opinion of the court:

Plaintiffs appeal the order of the circuit court of Kendall County dismissing their declaratory judgment action against defendants, Kirk Brown and the Illinois Department of Transportation (Department). In their second amended complaint, plaintiffs sought to have section 4—510 of the Illinois Highway Code (Highway Code) (605 ILCS 5/4—510 (West 2002)) declared unconstitutional as improperly taking or interfering with plaintiffs' property without just compensation or due process of law. The trial court dismissed plaintiffs' complaint pursuant to section 2—615 of the Code of Civil Procedure (Code) (735 ILCS 5/2—615 (West 2002)), holding that it failed to state a claim. On appeal, plaintiffs contend that their second amended complaint for declaratory relief properly stated a claim sufficient to avoid dismissal under section 2—615 of the Code; substantively, plaintiffs contend that section 4—510 of the Highway Code violates due process by allowing the State to effect a taking of plaintiffs' property without just compensation. We affirm.

■ To provide an understanding of the issues raised by plaintiff, we first turn to the language of the provision at issue. Section 4—510 of the Highway Code provides:

"The Department may establish presently the approximate locations and widths of rights of way for future additions to the State highway system to inform the public and prevent costly and conflicting development of the land involved.

The Department shall hold a public hearing whenever approximate locations and widths of rights of way for future highway

additions are to be established. The hearing shall be held in or near the county or counties where the land to be used is located and notice of the hearing shall be published in a newspaper or newspapers of general circulation in the county or counties involved. Any interested person or his representative may be heard. The Department shall evaluate the testimony given at the hearing.

The Department shall make a survey and prepare a map showing the location and approximate widths of the rights of way needed for future additions to the highway system. The map shall show existing highways in the area involved and the property lines and owners of record of all land that will be needed for the future additions and all other pertinent information. Approval of the map with any changes resulting from the hearing shall be indicated in the record of the hearing and a notice of the approval and a copy of the map shall be filed in the office of the recorder for all counties in which the land needed for future additions is located.

Public notice of the approval and filing shall be given in newspapers of general circulation in all counties where the land is located and shall be served by registered mail within 60 days thereafter on all owners of record of the land needed for future additions.

\*\*\*

After the map is filed and notice thereof given to the owners of record of the land needed for future additions, no one shall incur development costs or place improvements in, upon or under the land involved nor rebuild, alter or add to any existing structure without first giving 60 days notice by registered mail to the Department. This prohibition shall not apply to any normal or emergency repairs to existing structures. The Department shall have 45 days after receipt of that notice to inform the owner of the Department's intention to acquire the land involved; after which, it shall have the additional time of 120 days to acquire such land by purchase or to initiate action to acquire said land through the exercise of the right of eminent domain. When the right of way is acquired by the State no damages shall be allowed for any construction, alteration or addition in violation of this Section unless the Department has failed to acquire the land by purchase or has abandoned an eminent domain proceeding initiated pursuant to the provisions of this paragraph.

Any right of way needed for additions to the highway system may be acquired at any time by the State or by the county or municipality in which it is located. The time of determination of the value of the property to be taken under this Section for additions to the highway system shall be the date of the actual taking,

if the property is acquired by purchase, or the date of the filing of a complaint for condemnation, if the property is acquired through the exercise of the right of eminent domain, rather than the date when the map of the proposed right-of-way was filed of record. The rate of compensation to be paid for farm land acquired hereunder by the exercise of the right of eminent domain shall be in accordance with Section 4—501 of this Code [(605 ILCS 5/4—501 (West 2002))]." 605 ILCS 5/4—510 (West 2002).

In September 2002, plaintiffs filed their original complaint for declaratory relief. Following dismissal of that complaint and their amended complaint for declaratory relief, plaintiffs filed their second amended complaint for declaratory relief. In this complaint, plaintiffs alleged that, in March 1999, defendants began a feasibility study pertaining to constructing a roadway to connect Interstates 80 and 88 in Kane, Kendall, and Grundy Counties. Defendants complied with the requirements of the Highway Code, holding a public hearing in December 2001 regarding the corridor the new roadway was to occupy. On July 31, 2002, defendants recorded a map showing the proposed roadway, pursuant to the requirements of section 4—510 of the Highway Code. Plaintiffs alleged that, before the map was finally created and recorded, defendants failed to carry out any needs analysis regarding whether the properties through which the proposed roadway was to travel needed to be condemned or purchased. Further, defendants repeatedly acknowledged that they did not know if the proposed road would be necessary in the future.

At some time after the December 2001 public hearing, but before the map was finalized and recorded, defendants changed the location of the planned roadway, adding 61 new properties to those that would be affected by the proposed road. Plaintiffs alleged that section 4—510 of the Highway Code prohibited them from developing or using their properties, essentially granting to the State an option to condemn by virtue of the provision requiring an owner to contact defendants first before initiating any development or use of the property affected by the reservation map. Moreover, plaintiffs specifically alleged that Marvel Davis and Rojean Gum had abandoned plans to construct improvements on their properties in light of the possibility that defendants would seek to condemn their properties upon notification.

Plaintiffs raised three counts in their second amended complaint. The first count alleged that section 4—510 violated due process in that it did not require that defendants make a determination that the land is necessary for the public good and, instead, granted an option to defendants to condemn the land at some indeterminate time in the

future and gave no compensation for this option to any plaintiffs. Count II alleged that section 4—510 of the Highway Code violated the separation of powers by eliminating the requirement of a finding of necessity before land is earmarked for use in a proposed roadway and thus improperly infringing on the judicial interpretation of the constitutional requirements necessary for the State to exercise its right of eminent domain. In count III, plaintiffs alleged that section 4—510 of the Highway Code operated as an improper attempt by defendants to freeze plaintiffs' property values at artificially low levels.

Defendants filed a motion to dismiss pursuant to section 2—615 of the Code, arguing that plaintiffs had not sufficiently pleaded any of the counts of the complaint under section 2—603 of the Code (735 ILCS 5/2—603 (West 2002)). The trial court agreed, holding:

> "The plaintiffs' second amended complaint adds nothing new to this case. It still contains the fatal defects set forth in the Court's previous orders. Even considering the Plaintiffs' constitutional arguments, they lack standing to make them. There is neither an injury nor an immediate danger of sustaining an injury to some legally cognizable interest at this state and there are no facts which have been pled which show that there is an actual controversy between adverse parties. The legislation complained of does not affect the Plaintiffs at this juncture except in the general sense that all persons in Illinois are subject to the laws that the legislature promulgates. All the State has done here is file a map. This does not translate into an 'interest which is capable of being affected.' [Citation.]
>
> Neither is the map a cloud on title as maintained by the Plaintiffs. To constitute a cloud on title there must be a semblance of title which is, in fact, unfounded and which casts a doubt upon the validity of the record title. A valid interest in property cannot be a cloud on title. [Citation.]
>
> It is therefore ordered that this case is dismissed for the reasons set forth in this order and in the Court's previous rulings. Since it is clear at this point that there are no facts in this case which would entitle the Plaintiffs to relief, this case is dismissed with prejudice."

Plaintiffs timely appeal.

On appeal, plaintiffs first challenge the propriety of the trial court's dismissal of the second amended complaint for declaratory relief. In reviewing the propriety of the trial court's decision on a motion to dismiss pursuant to section 2—615 of the Code, we take as true all well-pleaded facts in the complaint. *Jackson v. South Holland Dodge, Inc.*, 197 Ill. 2d 39, 44 (2001). The question to be resolved is

whether the allegations of the complaint, when viewed in the light most favorable to the plaintiff, sufficiently state a cause of action upon which relief may be granted. *Jackson*, 197 Ill. 2d at 45. We review *de novo* the trial court's decision on a section 2—615 motion to dismiss. *Schramer v. Tiger Athletic Ass'n*, 351 Ill. App. 3d 1016, 1019 (2004).

■ This matter comes before us in a somewhat confused procedural posture. Plaintiffs are challenging the propriety of the trial court's order that they failed to adequately plead an action for declaratory relief. In a declaratory judgment action, there must be an actual controversy between adverse parties, and the party requesting relief must possess some claim, interest, or right that is capable of being affected by the grant of the relief sought. *Village of Itasca v. Village of Lisle*, 352 Ill. App. 3d 847, 851 (2004). In order to seek a declaratory judgment, a party must have a real interest in the outcome of the controversy, *i.e.*, the party must have standing. *Village of Itasca*, 352 Ill. App. 3d at 851. The doctrine of standing precludes parties who have no interest in the controversy from bringing suit. Standing requires some injury to a legally cognizable interest. The injury must be "actual or threatened, and it must be (1) distinct and palpable; (2) fairly traceable to the defendant's actions; and (3) substantially likely to be prevented or redressed by the grant of the requested relief." *Village of Itasca*, 352 Ill. App. 3d at 851.

■ As we noted above, this appeal presents a somewhat confused issue due to the unusual procedural posture presented here. Normally, a challenge to the constitutionality of a statute would not be dismissed at the pleading stage but, rather, would be resolved in a motion for judgment on the pleadings or in a motion for summary judgment. In our plenary review of plaintiffs' second amended complaint, we find that they have met the technical pleading requirements to maintain an action for declaratory relief. Plaintiffs allege that their properties have been affected by the statute. The map recorded by defendants encompasses parts of plaintiffs' various properties. Plaintiffs allege that the recording of the map has clouded their titles to their properties. Further, the terms of the statute require plaintiffs to seek defendants' approval before improving their properties. Although only 2 of the more than 40 plaintiffs allege that they have delayed plans for improving their properties, the remaining plaintiffs allege that section 4—510 would place their properties under governmental control should they decide to improve their properties. In addition, plaintiffs have pleaded at least a threatened injury to their interests. According to plaintiffs, section 4—510 creates an option to take their properties that is vested in defendants for an indefinite period of time. When a

plaintiff here decides to improve his property, he must run the gauntlet of condemnation by defendants. Finally, according to plaintiffs, the recorded map of reservation operates as a cloud on title that depresses their property values. We find that these allegations, when viewed in the light most favorable to plaintiffs, suggest at least the imminent threat of an injury caused by defendants' invocation and use of the provisions of section 4—510. Thus, we find that the trial court erred in dismissing plaintiffs' second amended complaint for failing to adequately plead standing. That said, however, we hold that the trial court properly dismissed plaintiffs' second amended complaint.

In reaching this conclusion, we note that plaintiffs invite us to reach the merits of their challenges to section 4—510. Usually, questions not reached in the trial court are remanded for the trial court to consider first before we review them. However, because the question presented here is purely a question of law, we may review it and render any judgment that should have been made. *Shortridge v. Sherman*, 84 Ill. App. 3d 981, 986 (1980).

Plaintiffs argue that section 4—510 violates the due process clause because it impermissibly depresses their property values and would minimize defendants' costs in acquiring the properties if they are condemned at some time in the future. In interpreting statutory language, our primary purpose is to ascertain and give effect to the legislature's intent. We do this by construing the language the legislature employed in drafting the statute. *Puffer-Hefty School District No. 69 v. Du Page Regional Board of School Trustees*, 339 Ill. App. 3d 194, 201 (2003). A statute enjoys a strong presumption of constitutionality, and the party challenging a statute's constitutionality bears the burden of rebutting the presumption and establishing a constitutional violation. *Puffer-Hefty*, 339 Ill. App. 3d at 201. A court, therefore, will construe a statute to be constitutional where it can reasonably do so. *Puffer-Hefty*, 339 Ill. App. 3d at 201.

Plaintiffs' contention is based on a misreading of section 4—510. One of plaintiffs' key points is that section 4—510 circumvents the law of eminent domain by dispensing with the necessity of the condemning body making a finding of public need in order to acquire the property via condemnation. This contention is belied by the plain words of the statute. Section 4—510 provides, pertinently, that, upon being notified of a landowner's intention to construct an improvement on land earmarked for future highway development,

> "[t]he Department shall have 45 days after receipt of that notice to inform the owner of the Department's intention to acquire the land involved; after which, it shall have the additional time of 120

days to acquire such land by purchase or to initiate action to acquire said land through the exercise of the right of eminent domain." 605 ILCS 5/4—510 (West 2002).

Thus, once defendants decide to acquire plaintiffs' land other than by purchase, they must employ condemnation proceedings under the eminent domain law (735 ILCS 5/7—101 *et seq.* (West 2002)) to accomplish their purpose. Plaintiffs' contention that section 4—510 dispenses with the procedural requirements of eminent domain law is not borne out by the plain language of section 4—510.

The cases relied upon by plaintiffs to support this argument are inapposite. In *People ex rel. Director of Finance v. Young Women's Christian Ass'n*, 86 Ill. 2d 219, 237 (1981), the court determined that there had not been a formal determination of necessity sufficient to support the petition for eminent domain at issue in that case. Here, by contrast, there is no issue of eminent domain, only the recording of a map denoting the right-of-way for possible future highway construction. Likewise in *Goldman v. Moore*, 35 Ill. 2d 450, 453-54 (1966), which held that the condemning body's failure to pass a resolution regarding the acquisition of land by eminent domain required dismissal of the eminent domain petition. The statute at issue here, by contrast, requires defendants to avail themselves of the eminent domain law only at such time as they decide to condemn any of the properties at issue in this case. Thus, necessity, as used in the eminent domain law, is not implicated until such time as defendants decide to acquire property via the use of their eminent domain powers. *Director of Finance* and *Goldman* are inapposite.

Plaintiffs also contend that section 4—510 attempts to override or bypass the well-settled judicial interpretations of constitutional requirements. While it is true that the legislature cannot enact a statute that overrides or circumvents the constitution (see *Chicago Bar Ass'n v. Department of Revenue*, 163 Ill. 2d 290, 297 (1994)), we see nothing in section 4—510 that circumvents the constitutional requirements of the exercise of the power of eminent domain. Indeed, section 4—510 commands defendants to negotiate the acquisition of the subject property or to "initiate action to acquire said land through the exercise of the right of eminent domain" (605 ILCS 5/4—510 (West 2002)), *i.e.*, to use the eminent domain law (735 ILCS 5/7—101 *et seq.* (West 2002)) to acquire the subject property. We reject this contention.

Plaintiffs next contend that, because section 4—510 confers unfettered discretion upon defendants with no standards by which defendants are to constrain their discretion in implementing section

4—510, it is void. While we do not disagree with plaintiffs' statement of what the law is (see *In re Application for Judgment & Sale of Delinquent Properties for the Tax Year 1989*, 167 Ill. 2d 161, 176-77 (1995)), we find no application of that statement of the law to this case. Plaintiffs fail to note that section 4—510 is, at heart, a procedural provision setting forth the manner in which the creation and dissemination of planned highway expansions are to be conducted. Plaintiffs' argument, that defendants confuse that process with the standards by which they are to exercise their discretion in this matter, is therefore unavailing. We also note that the Highway Code (605 ILCS 5/1—101 *et seq.* (West 2002)) consists of far more than section 4—510 and provides a comprehensive scheme to regulate the construction and maintenance of the state's highways. Plaintiffs' focus on section 4—510 to the exclusion of all other provisions contained in the Highway Code is too narrow.

While plaintiffs do not explicitly make the argument, they appear to suggest that section 4—510 is unconstitutional because it depresses the value of their properties or prevents them from realizing the full use of their properties. To the extent, therefore, that plaintiffs are complaining that section 4—510 constitutes an improper taking of their properties, we disagree. While plaintiffs have alleged that their land values have decreased as a result of defendants' recording the reservation map, they have pleaded no facts to support this conclusion. In addition, they have pleaded no facts regarding how they have been prevented from using their properties or how defendants' invocation of section 4—510 has deprived them of the current economic use of their land. No taking occurs unless the condemning body physically intrudes upon the premises or has radically curtailed the owner's use of his property. *Towne v. Town of Libertyville*, 190 Ill. App. 3d 563, 568 (1989). The failure specifically to plead how they were damaged by the recording of the map, or how they were deprived of all or an essential use of their properties, dooms this argument. See *Towne*, 190 Ill. App. 3d at 568-69.

Last, plaintiffs point to a number of cases standing for the proposition that laws or ordinances that act to freeze or depress property values violate the due process clause and the prohibition against deprivation of property without just compensation. We find the cases relied upon by plaintiffs to be distinguishable. In most of those cases, the court disapproved of a zoning provision or municipal ordinance that prevented the land's value from increasing or that decreased the land's value. *Robertson v. City of Salem*, 191 F. Supp. 605 (D. Or. 1961) (ordinance precluding business uses was unconstitutional taking);

*Board of Commissioners of State Institutions v. Tallahassee Bank & Trust Co.*, 108 So. 2d 74 (Fla. App. 1958) (zoning restriction was invalid where imposed to avoid increase in cost of acquiring property); *Carl M. Freeman Associates, Inc. v. State Roads Comm'n*, 252 Md. 319, 250 A.2d 250 (1969) (county ordinance precluding rezoning of property within highway corridor was invalid as impermissibly freezing property values); *Henle v. City of Euclid*, 97 Ohio App. 258, 125 N.E.2d 355 (1954) (refusal to rezone property to allow gas station use in view of speculative future need to widen street was held improper); *State ex rel. Sun Oil Co. v. City of Euclid*, 164 Ohio St. 265, 130 N.E.2d 336 (1955) (building permit was improperly denied based on municipal ordinance reserving land for street where municipality did not bother to enact ordinance establishing street). Because each of these cases involved an ordinance actually prohibiting or diminishing the use of the property, we find these cases to be distinguishable. Here, by contrast, section 4—510 does not prohibit plaintiffs from using or improving their land at all; it merely requires plaintiffs to give defendants prior notice of their intent to do so. Defendants then must allow the improvement or else purchase or condemn the property. Plaintiffs are still allowed the use and development of their lands so long as the current public need does not require condemnation.

Plaintiffs also cite to one case in which a map of reservation was recorded. There, the Florida Department of Transportation recorded a map affecting most of the plaintiff's parcel of land. Under Florida law, however, no one was permitted to substantially develop land depicted on a map of reservation for a period of five years (excepting private residences). The court held that the statute was unconstitutional because it prevented the plaintiff from developing its land without subjecting it to condemnation. *Joint Ventures, Inc. v. Department of Transportation*, 563 So. 2d 622 (Fla. 1990). Here, by contrast, section 4—510 does not prohibit development or improvement; rather, it requires plaintiffs to notify defendants of their intentions. Thereafter, if defendants do not perceive the current public necessity to condemn the property, plaintiffs may develop or improve their properties as they wish. *Joint Ventures*, arising under a different statutory scheme, does not support plaintiffs' contentions.

We also make one last comment. Plaintiffs' overarching concern in all of their arguments is that the Department will base its determination of a public need on a landowner's notice of his intent to construct an improvement on his property. In other words, the development or improvement of the property will trigger the public need and the ensuing condemnation action. We find this concern to be premature

and misplaced. Plaintiffs argue that an intention to improve cannot be the basis to create a public need. We find that the appropriate time to raise such an argument is when, if ever, the Department commences an action to condemn. Right now, in response to the notification of intention to improve, the Department determines whether it will attempt to negotiate for the purchase of the property or a portion of the property. If the Department decides to attempt to acquire the property, then the landowner may refuse to sell it. Regardless of the landowner's decision, the negotiations are voluntary and do not implicate the Department's powers of eminent domain. Likewise, the concept of public need as used in eminent domain proceedings is irrelevant at the point where the Department and the landowner are voluntarily negotiating. If the landowner refuses to sell land to the Department, then the Department may institute a condemnation proceeding. Then, if a public need for the land exists, the Department will prevail in the condemnation suit and acquire the land; if a public need for the land does not exist, then the landowner will be able to traverse the condemnation and the Department will be unable to condemn the land. Public need, therefore, is properly addressed only in the context of a condemnation proceeding, and plaintiffs' concerns about the interplay of need and section 4—510 are premature and misplaced.

For the foregoing reasons, the judgment of the circuit court of Kendall County is affirmed.

Affirmed.

CALLUM and KAPALA, JJ., concur.