In the

# United States Court of Appeals
## For the Seventh Circuit

No. 10-1106

ROCK ENERGY COOPERATIVE,

*Plaintiff-Appellant*,

*v.*

VILLAGE OF ROCKTON,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Western Division.
No. 09 C 50111—**Frederick J. Kapala**, *Judge.*

ARGUED MAY 25, 2010—DECIDED AUGUST 10, 2010

Before FLAUM, ROVNER, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* The Village of Rockton, Illinois, and the Rock Energy Cooperative are fighting over who ultimately will own some assets used by the natural gas and electric utilities in the area. Originally the assets were the property of Alliant Energy, but Alliant wanted to sell them. They wound up in Rock Energy's hands, but in the meantime the Village passed a referendum authorizing it to acquire the assets. Although the Village

has taken no direct steps in that direction (at least as of the time this case was argued in our court), Rock Energy is seeking a declaration to the effect that the Village does not have proper authority to purchase or condemn the assets. We conclude that this litigation is premature and thus affirm the district court's judgment dismissing the action.

## I

Rock Energy is a consumer-owned utility that provides gas and electricity to its members on a cost-of-service, nonprofit basis. In 2004, Alliant announced that it would take bids for the sale of assets held by its subsidiary, South Beloit Water, Gas and Electric Company. (For simplicity, we will refer to them as the Alliant assets.) The announcement caught the attention of both Rock Energy and the Village. Rock Energy submitted a bid for the Alliant assets, and the Board of Trustees of Rockton passed an ordinance on January 18, 2005, authorizing the Village to acquire the assets by purchase or condemnation.

Unfortunately, according to Rock Energy (but vigorously disputed by the Village), there was a potential technical problem with the passage of the ordinance. The version of the ordinance published for the voters' review on March 17, 2005, in a local newspaper, stated that the Village was to be authorized to spend up to $35 million to acquire the Alliant assets. But there was a different version of the ordinance floating around, under which the Village would be authorized to spend up to $48 million for the Alliant assets. The two versions

differed in other respects as well. The $35 million version referred to and included maps depicting the general location of the assets and had a lengthy, 28-page appendix with more details. On March 24, the paper printed a specimen ballot with the questions, but not the dollar amount, from the $48 million version. The referendum took place on April 5, 2005. The actual ballot asked the voters to approve the expenditure of up to $48 million for the assets, and they did so. It is Rock Energy's position that the discrepancy between the published version and the version passed by the voters resulted in a violation of 65 ILCS 5/11-117-3.

At the time the voters approved the ordinance, Rock Energy was still negotiating with Alliant for the purchase of the assets. A few months later, on June 30, 2005, the Village and Rock Energy entered into a Memorandum of Understanding (the "MOU"), in which they expressed their "mutual intent to explore the feasibility of Rockton['s] acquiring the local utility assets" from Rock Energy. In the MOU, Rock Energy agreed to sell the assets to the Village if certain conditions were satisfied, including the completion by the Village of a feasibility analysis addressing topics such as finance, safety, reliability, and operations; the parties also needed to come to an agreement on the price that the Village would pay. The next day, Rock Energy entered into a contract with Alliant to purchase the assets; for reasons that are not explained, it took another year and a half for that transaction to close. By February 2007, however, Rock Energy owned the Alliant assets. After that, the Village told Rock Energy on more than one occasion that it wanted

to acquire the assets, as contemplated by the MOU. For example, Rock Energy alleges that the Village wrote to it on March 29, 2009, stating that "[t]he Village Board made the decision in 2005 that pursuing this purchase was in the best interests of the Village, this was confirmed by over 60% of the voters and has been consistently supported by the Village Board through multiple election cycles." The Village has also threatened to condemn the assets, using its power of eminent domain.

The March 29 letter was apparently the last straw for Rock Energy. On May 11, 2009, it filed a complaint in the district court for the Northern District of Illinois seeking a declaratory judgment stating that "the Village of Rockton has not met the requirements of Illinois law to acquire electric and gas utility assets from Rock Energy Cooperative." The complaint asserts that jurisdiction exists under 28 U.S.C. § 1332, because Rock Energy is a citizen of Wisconsin (incorporated in Wisconsin and headquartered there) and the Village is a citizen of Illinois, as it is a non-home-rule municipality of that state. The Village, in the meantime, filed a complaint in the Circuit Court of Winnebago County, Illinois, seeking declaratory relief and specific performance of Rock Energy's alleged commitment to sell under the MOU.

The district court dismissed Rock Energy's suit on the ground that it lacked standing to challenge the Village's compliance with Illinois law when it passed the ordinance. To the extent that Rock Energy was attempting to assert that the Village had failed to satisfy the preconditions outlined in the MOU, the court held that venue

was improper under the forum selection clause in the agreement, which said that "any litigation relating to this MOU will take place exclusively in the Circuit Court of Winnebago County Illinois." Turning to the litigation that the Village had initiated in that court, we learned through a supplemental filing that on April 29, 2010, Circuit Judge J. Edward Prochaska dismissed the Village's action for specific performance with prejudice. See *Village of Rockton v. Rock Energy Cooperative*, Case No. 2009 MR 427 (Ill. Cir. Ct., 17th Jud. Cir.). The state court held that the MOU was unenforceable as a matter of law, because the indefinite price term contemplated future negotiations. Without the essential price term (or even a formula for arriving at price), the court found that there was nothing definite enough to be the subject of an order for specific performance.

## II

Before this court on appeal, Rock Energy challenges both bases of the district court's ruling. It insists that it has standing to seek a declaration that the Village lacks authority to acquire the Alliant assets, arguing that it faces an actual, imminent injury-in-fact that is concrete and particularized; that its injury is caused by the Village's actions; and that its injury is redressable through the court's declaration. See, *e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-62 (1992). Rock Energy also urges us to disregard the choice-of-forum clause in the MOU because, it says, its case is about the Village's "fundamental" lack of authority to go forward with the

acquisition and thus it is not constrained by the MOU. The Village's initial response is that diversity jurisdiction is lacking, because Rock Energy has failed to demonstrate that more than $75,000 is at stake. See 28 U.S.C. § 1332(a). The record shows, however, that the parties are fighting over the transfer of approximately $10 million in utility assets, and so we are satisfied that our subject-matter jurisdiction is secure. That conclusion is not undermined by the possibility, or likelihood, that the Village will pay fair market value for whatever assets are transferred. Rock Energy wants the assets, not their equivalent in dollars, and its effort to keep those assets out of the Village's hands suffices to meet the amount-in-controversy requirement. See *America's MoneyLine, Inc. v. Coleman*, 360 F.3d 782, 786 (7th Cir. 2004) (endorsing the so-called "either viewpoint" rule).

The Village has also pursued some more promising avenues in support of the district court's judgment. There are only two ways in which Rock Energy could be forced into selling its assets to the Village: first, through the Village's exercise of its power of eminent domain, or second, through the MOU, if that document were construed to create a contractual obligation on Rock Energy's part to sell. We find that neither one of these possibilities is sufficiently concrete to support Rock Energy's suit.

Article III of the U.S. Constitution limits the authority of the federal courts to "cases or controversies." From that requirement flow two closely related concepts: ripeness and standing. *Smith v. Wis. Dep't of Agric., Trade*

*and Consumer Prot.,* 23 F.3d 1134, 1141 (7th Cir. 1994). Both of these doctrines bar a plaintiff from asserting an injury that "depend[s] on so many future events that a judicial opinion would be advice about remote contingencies." *Meridian Sec. Ins. Co. v. Sadowski,* 441 F.3d 536, 538 (7th Cir. 2006). Focusing particularly on suits for declaratory relief, the Supreme Court has explained that courts must look at "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 127 (2007). The application of these principles is not always easy, as we observed in *Wisconsin Central, Ltd. v. Shannon,* 539 F.3d 751, 759 (7th Cir. 2008) ("[T]he distinction between a 'controversy' in the Article III sense and an abstract question of law is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy.") (internal quotation marks and citations omitted).

We begin with Rock Energy's eminent-domain theory. The company would like us to believe that its Alliant assets are likely to be taken by the Village at any moment. As we held in *Shannon,* it continues, it is "no bar to ripeness if the government has only threatened enforcement, rather than actually brought a lawsuit." 539 F.3d at 760. But this record is startlingly devoid of evidence that the Village is waiting to pounce with an eminent-domain action. The ordinance about which Rock Energy complains was passed five years ago; Rock Energy has

had a contractual right to own the assets for the same five years; and it has actually held them for more than three years. That does not sound like imminence to us. What Rock Energy does not like is living, as it might put it, under the Sword of Damocles, knowing that its property rights can be cut off by the Village's eminent-domain power at any moment.

This case does not look like some of the other Illinois cases on which Rock Energy relies, where the unrealized threat of eminent domain was well on the road to fulfillment. For example, in *Davis v. Brown*, 827 N.E.2d 508 (Ill. App. Ct. 2005), the state authorities had an elaborate plan in place to take the plaintiffs' property, and the ordinance in question restricted their use of the property during the lead-up to the taking. *Id.* at 511-13. In *Philip v. Daley*, 790 N.E.2d 961 (Ill. App. Ct. 2003), the city was in the midst of executing a detailed plan to take the plaintiffs' property. *Id.* at 963-64. As far as this record shows, during the years since the ordinance was passed, the Village has done nothing other than write a letter or two indicating that condemnation was on the table. The Village's state-court action was based on the MOU. We discuss the MOU below; here we note only that it does not support the hypothesis of an imminent threat of eminent domain.

Rock Energy also fares badly when we consider the Supreme Court's approach to pre-enforcement challenges to government action. The leading case is *Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967). The Court there explained that the ripeness of a pre-enforcement

challenge hinges on "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* at 149; see also *Metro. Milwaukee Ass'n of Commerce v. Milwaukee County,* 325 F.3d 879, 881-84 (7th Cir. 2003). We can grant here that the primary issue Rock Energy wants to raise is a legal one: whether the procedures the Village used in passing the 2005 ordinance complied with Illinois law. (We offer no opinion on the question—hotly debated before this court—whether Rock Energy is a suitable party to raise this point; here we are merely identifying it as a legal issue.) But the second part of the Court's inquiry is not so easy for Rock Energy. It has not shown how a decision on its declaratory judgment complaint would resolve some present hardship. Nothing in this record indicates that an eminent-domain action is "certain, only delayed," nor does the record show how the threat of future enforcement is having a present concrete, adverse, and irremediable effect on Rock Energy's day-to-day affairs. We note as well that the Anti-Injunction Act, 28 U.S.C. § 2283, would prohibit a federal court from enjoining a state-court proceeding that has already commenced, and any other effort to use the federal courts to interfere with an ongoing state-court condemnation case would need to reckon with such cases as *Younger v. Harris,* 401 U.S. 37 (1971).

If and when the Village ever initiates eminent-domain proceedings in the state court, Rock Energy will be able to assert the same defenses that it has put forward here. If, for example, it wants to argue that the Village's action against it is not authorized by Illinois law, it can present

that contention to the court and see how it fares. Rock Energy would also have the opportunity in any such proceeding to argue that the Village's estimate of fair market value for the Alliant assets is too low, if that is in fact what it thinks. We conclude that the chance of future eminent-domain proceedings in this case is too remote to support the claim that Rock Energy is trying to litigate.

Turning to the MOU, we find that Rock Energy's case is equally flawed. We note to begin with that Rock Energy has firmly disclaimed any intent to rely on the MOU (presumably because it is trying to avoid the choice-of-forum clause). If the MOU is really off the table, then it can neither help nor harm Rock Energy. If the memorandum continues to have some effect, the only way that it might make Rock Energy worse off is if it is a binding agreement that gives the Village a contractual right to acquire the Alliant assets for some agreed amount of money. But, as the state court pointed out, there is no agreement on price in the MOU, nor is there a formula by which the price could be computed. And by now, we also know that the state court has found, in litigation between the same parties, that the agreement is unenforceable. The finding on that issue is almost certainly entitled to preclusive effect under Illinois law, see *People v. Tenner*, 794 N.E.2d 238, 247 (Ill. 2002) (setting out requirements for collateral estoppel in Illinois), and thus in a federal court as well, see 28 U.S.C. § 1738. Finally, as the district court pointed out, to the extent that the MOU has a role to play in this case, it includes a clear choice-of-forum clause directing all

litigation to the state court. Under Illinois law, which the parties selected in the MOU, the court will override the parties' contractual choice of forum only if that choice would as a practical matter deprive the plaintiff of its day in court. See *Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp.,* 130 S. Ct. 2433, 2448 (2010); see also *Abbott Labs. v. Takeda Pharm. Co.,* 476 F.3d 421, 423-24 (7th Cir. 2007). No costs of that kind are imaginable here; the Circuit Court of Winnebago County sits in Rockford, Illinois, at 400 W. State Street, 0.2 miles away by car from the U.S. District Court for the Northern District of Illinois, Western Division, at 211 S. Court Street in Rockford. Furthermore, the fact that the parties may have substantive objections to the scope of the contract does not undermine the forum-selection clause, which is severable from such questions. See, *e.g., Kochert v. Adagen Med. Int'l, Inc.,* 491 F.3d 674 (7th Cir. 2007).

The parties have presented additional arguments, but we have said enough to dispose of this appeal. The district court correctly recognized that this case was not an appropriate candidate for a declaratory judgment. We therefore AFFIRM its judgment dismissing Rock Energy's suit.