In the

# United States Court of Appeals
## For the Seventh Circuit

No. 19-1805

DEBORAH AMLING, personally, and as Personal Representative for the ESTATE OF ROBERT M. AMLING,

*Plaintiffs-Appellants*,

*v.*

HARROW INDUSTRIES LLC, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 3:18-cv-03108-SEM-TSH — **Sue E. Myerscough**, *Judge*.

ARGUED SEPTEMBER 23, 2019 — DECIDED NOVEMBER 19, 2019

Before EASTERBROOK, HAMILTON, and ST. EVE, *Circuit Judges*.

HAMILTON, *Circuit Judge*. Deborah Amling and her husband Robert sued Harrow Industries and other businesses in an Illinois state court for causing Robert to develop mesothelioma by exposing him to asbestos. Two years later, the Amlings sued Harrow again, this time in federal court, seeking a declaratory judgment on the meaning of an asset-purchase

agreement between Harrow and another company, Nexus, also a defendant in the Amlings' state suit. The district judge thought the declaratory judgment action unripe and dismissed it. Even if it were ripe, the judge ruled in the alternative, she would decline to exercise jurisdiction over it. The Amlings appealed. Robert died while this appeal has been pending; Deborah now prosecutes the state and the federal lawsuits in her own right and as representative of Robert's estate.

We affirm. It is virtually certain that the Amlings' state suit will answer the question presented by their federal suit: whether under the terms of the asset-purchase agreement Harrow or Nexus could be liable for their injuries. That fact makes this a live controversy but simultaneously justifies the district court's sound exercise of its discretion in deciding not to issue a declaratory judgment.

I.   *Factual and Procedural Background*

To determine whether subject matter jurisdiction exists, a court may look past the complaint to any pertinent evidence. *Sapperstein v. Hager*, 188 F.3d 852, 855 (7th Cir. 1999). The complaint's jurisdictional allegations are taken as true, though, unless the defendant offers evidence calling jurisdiction into question. *Id.* at 856. The undisputed jurisdictional facts in this case are taken from the Amlings' federal and state complaints, as well as from the docket of a related federal case and certain public documents, all properly subject to the district court's judicial notice.

Robert Amling began working in the horticulture industry in 1965 and continued in that career for the rest of his working life. At one point, Robert worked for National Greenhouse

Company, whose products allegedly contained asbestos to which he was exposed during his work.

Sometime between 1965 and 1990, National Greenhouse's assets and liabilities were transferred to Harrow Products, a division of Harrow Industries. In November 1990, Harrow Products executed an asset-purchase agreement with Nexus, transferring all of National Greenhouse's assets and, critically for our purposes, *some* of its liabilities to Nexus, as defined by the agreement.

Robert Amling was diagnosed with mesothelioma in 2015. In 2016, the Amlings sued Harrow, Nexus, and others in Illinois state court, alleging the defendants caused Robert's mesothelioma by tortiously exposing him to asbestos.

In 2017, Harrow filed a declaratory judgment action against Nexus in the Central District of Illinois. Harrow sought a declaration that any liability of National Greenhouse to the Amlings had passed from Harrow to Nexus under the terms of the 1990 asset-purchase agreement. Apprised of Harrow's suit, the Amlings successfully sought a stay of their own suit and unsuccessfully moved to intervene in Harrow's. Harrow voluntarily dismissed its action in 2018 without a decision on the merits.

The Amlings then filed their own declaratory judgment action in the same federal district court—the case before us now. The district court had jurisdiction of the suit under 28 U.S.C. § 1332. The Amlings' suit is basically a mirror image of Harrow's: it seeks a declaration that under the terms of the 1990 agreement, Harrow, not Nexus or any other entity, is liable for National Greenhouse's torts alleged in the Amlings' state complaint. (Schlage Lock Company is also named as a

defendant here as Harrow's alter ego or successor in interest; we need not discuss it further.) The Amlings' state case is still stayed.

Prudently policing its own jurisdiction, the district court ordered the parties to address whether the case was justiciable. After briefing, the court concluded it was not because there not yet a ripe controversy suitable for judicial action. In the alternative, the court held it would decline to exercise whatever jurisdiction it might have had. The court dismissed the action without prejudice. We have jurisdiction of the Amlings' appeal under 28 U.S.C. § 1291.

II. *Analysis*

The Declaratory Judgment Act provides, with irrelevant exceptions: "In a *case of actual controversy* within its jurisdiction," a district court "*may declare* the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphases added). The two italicized phrases are the subjects of this appeal. We address each in turn.

A. *"Case of Actual Controversy"*

Article III of the Constitution limits the jurisdiction of federal courts to "cases" and "controversies." *Rock Energy Coop. v. Village of Rockton*, 614 F.3d 745, 748 (7th Cir. 2010). The phrase "case of actual controversy" in the Declaratory Judgment Act "refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007), citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937). The requirements of the Act and those of Article III are therefore coextensive. See *Aetna*, 300 U.S. at 239–41. We review *de novo* whether these

requirements have been met. *Deveraux v. City of Chicago*, 14 F.3d 328, 330 (7th Cir. 1994).

One aspect of the case-or-controversy requirement is ripeness. *Central States, Southeast and Southwest Areas Health and Welfare Fund ex rel. Bunte v. American Int'l Group*, 840 F.3d 448, 451 n.2 (7th Cir. 2016), citing *Metropolitan Washington Airports Auth. v. Citizens for Abatement of Aircraft Noise, Inc.*, 501 U.S. 252, 265 n.13 (1991). Declaratory judgment actions are ripe and otherwise justiciable when "'the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *MedImmune*, 549 U.S. at 127, quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941). There must be a "definite and concrete," "real and substantial" dispute that "touches the legal relations of parties having adverse legal interests" and "admits of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* (cleaned up), quoting *Aetna*, 300 U.S. at 240–41. These general phrases take on more concrete meaning in specific cases.[1]

---

[1] The Supreme Court generally treats ripeness as an aspect of subject-matter jurisdiction. In a few cases, however, typically presenting issues of national importance that would inevitably be decided soon, the Court has treated ripeness not so much as binary and jurisdictional but instead as allowing some room for the exercise of pragmatic judgment about justiciability. See, e.g., *Buckley v. Valeo*, 424 U.S. 1, 117–18 (1976) ("this is a question of ripeness, rather than lack of case or controversy under Art. III"; constitutional challenge to method of selecting members of new Federal Election Commission had become more ripe while appeal was pending under special statute for expedited judicial review); *Regional Rail*

Whether the 1990 asset-purchase agreement provided that Harrow or Nexus would be liable to the Amlings for torts by National Greenhouse is such a ripe and specific controversy. We do not yet know whether National Greenhouse tortiously caused Robert's mesothelioma. We know that, if it did, Harrow or Nexus may be liable for it. Interpreting the 1990 agreement is necessary and sufficient to find out which.

Moreover, it is virtually certain that, absent federal intervention, the question will be answered in the ordinary course of the ongoing state litigation. Harrow and/or Nexus have every reason to insist on its judicial determination. As noted, Harrow has already tried once to secure one. As a matter of procedure such determination may be made "at any stage of the cause, before or after judgment, as the ends of justice may require," 735 Ill. Comp. Stat. 5/2-407 (nonjoinder and misjoinder of parties), and as a matter of substance, the determination could be made today. The meaning of the 1990 agreement as applied to the Amlings' claims waits on no future condition.

---

*Reorganization Act Cases*, 419 U.S. 102, 140 (1974) (question of ripeness was jurisdictional but also called for prudential judgment; Takings Clause challenge to Act had become inevitable while appeal of dismissal for lack of ripeness was pending). Especially in Declaratory Judgment Act jurisprudence, where the Act predated modern refinements of different threads of justiciability doctrine, including ripeness, mootness, standing, and even abstention, the distinctions among those doctrines are not always crisp. See, e.g., *MedImmune*, 549 U.S. at 128 n.8 (reversing dismissal of action; "standing and ripeness boil down to the same question in this case"); *Rock Energy*, 614 F.3d at 748 (where district court dismissed for lack of standing, we affirmed for lack of ripeness). Because this case presents a ripe controversy, we need not try to resolve here the tension in the case law between jurisdictional purity and occasional pragmatic flexibility.

Ripeness and other justiciability requirements bar a federal court from deciding a question that depends on so many future events that a judicial opinion would be "advice about remote contingencies." *Rock Energy*, 614 F.3d at 748, quoting *Meridian Sec. Ins. v. Sadowski*, 441 F.3d 536, 538 (7th Cir. 2006). There is nothing remote about a plaintiff's asking which of two defendants she is currently suing is the right one to sue. In a practical sense, there is nothing contingent about it either. If the plaintiff does not raise the question, one or both defendants almost certainly will.

The parties and the district court focused on the extensive case law dealing with the justiciability of disputes among tort victims, insured tortfeasors, and insurers. Such disputes are often the subject of declaratory judgment cases. Those cases teach that a live dispute between an insurer and its insured over the insurer's duties to defend and indemnify the insured against its victim's tort claims is also a live dispute between each of them and the victim. *Maryland Casualty Co.*, 312 U.S. at 273–74; *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 680–82 (7th Cir. 1992); *Truck Insurance Exchange v. Ashland Oil, Inc.*, 951 F.2d 787, 789 (7th Cir. 1992); *Hawkeye-Security Ins. Co. v. Schulte*, 302 F.2d 174, 176–77 (7th Cir. 1962).

As we summarized in *Truck Insurance Exchange*, "a tort victim has a practical, albeit only a potential, financial interest in the tortfeasor's insurance policy, and the impairment of such an interest is an injury that will support standing under Article III." 951 F.2d at 789. And again in *Bankers Trust*: a tort victim "has a legally protectable interest" in the tortfeasor's insurance policy even before she has reduced her tort claim to judgment, and "[s]uch an interest is all one needs to bring a dispute that seriously threatens it within the scope of Article

III." 959 F.2d at 682. If a tort victim has a protectable interest in an indemnification contract, which assumes liability and determines merely who will pay for it, *a fortiori* she has a protectable interest in a contract that determines who holds the underlying liability in the first place.

True, "[w]e regularly say that decisions about indemnity should be postponed until the underlying liability has been established," *Lear Corp. v. Johnson Elec. Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003) (collecting cases), though *Bankers Trust* shows the rule is "general" rather than "absolute." 959 F.2d at 680. The general rule exists because, until a case proceeds to judgment, "the precise ground of liability, and thus the relation of the insured's liability to the policy's coverage and exclusions, is uncertain." *Meridian Sec. Ins.*, 441 F.3d at 538. Here, by contrast, the question concerns the operation of the 1990 asset-purchase agreement on the day it was executed.

For these reasons, we disagree with the district court's conclusion that the Amlings' declaratory judgment action was not a "case of actual controversy" within the meaning of the Declaratory Judgment Act and Article III. It presents a ripe controversy. That is not the end of this appeal, however, because the district court ruled in the alternative that it would not exercise whatever jurisdiction it had over the Amlings' action. We agree with that ruling.

B.  *"May Declare"*

The Declaratory Judgment Act "says only that the court '*may* declare the rights and other legal relations of any interested party, not that it *must* do so.'" *Haze v. Kubicek*, 880 F.3d 946, 951 (7th Cir. 2018), quoting *MedImmune*, 549 U.S. at 136 (internal citation and quotation marks omitted). This

statutory language has long been understood to confer on federal courts "unique and substantial discretion in deciding whether to declare the rights of litigants." *Id.*, quoting *MedImmune*, 549 U.S. at 136. We review a district court's decision not to declare the rights of litigants for abuse of that discretion. *Envision Healthcare, Inc. v. PreferredOne Ins. Co.*, 604 F.3d 983, 985–86 (7th Cir. 2010).

Before turning to the district court's exercise of its discretion in this case, we must address Harrow's argument that, coming on the heels of its no-jurisdiction ruling, the court's alternative ruling was advisory and unreviewable. We disagree with that conclusion. Among different "threshold grounds for denying audience to a case on the merits," there is no mandatory priority. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007), quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999). For example, a court need not decide whether it has personal jurisdiction over the defendant before dismissing for *forum non conveniens*, *id.* at 435–36, nor whether non-federal claims come within its supplemental jurisdiction before exercising its discretion not to decide them after independent bases for federal jurisdiction have fallen away, see *Moor v. Alameda County*, 411 U.S. 693, 715 (1973), nor whether the plaintiff has Article III standing before dismissing on grounds of sovereign immunity. *Meyers v. Oneida Tribe of Indians of Wis.*, 836 F.3d 818, 821–23 (7th Cir. 2016). Nor, we conclude, must a court decide that a declaratory judgment action presents a "case of actual controversy" before exercising its discretion not to decide it.

The district court's discretion on this point was guided by what is now known as the *Wilton-Brillhart* doctrine. See *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995); *Brillhart v. Excess*

*Insurance Co.*, 316 U.S. 491 (1942). While there are "no set criteria" under *Wilton-Brillhart* for determining proper declination, the "classic example" is declining to hear a federal declaratory action while an action pending in state court between the same parties will answer "the same precise legal question." *Envision Healthcare*, 604 F.3d at 986–87.

This case is such a "classic example." The Amlings' declaratory judgment action is basically an attempt at reverse certification: asking the district court to decide a discrete question of state contract law for use by the same parties in ongoing state-court litigation of state-law tort claims. The district court did not abuse its discretion in deciding not to answer that question of state law that almost certainly will be answered by the state courts. Its judgment of dismissal is therefore

AFFIRMED.

Sᴛ. Eᴠᴇ, *Circuit Judge*, concurring. I agree that the district court did not abuse its discretion in declining to exercise its jurisdiction over the Amlings' declaratory judgment action under the *Wilton-Brillhart* doctrine, and thus concur in the judgment. I write separately, however, because I disagree that the Amlings had standing to bring this case in the first place. Again, in the federal suit, the Amlings seek a declaration regarding the rights and obligations as *between Harrow and Nexus* based on an asset purchase agreement to which the Amlings are neither a party nor a third-party beneficiary. In support of standing, the Amlings rely entirely on cases involving insurance contracts. *See, e.g.*, *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270 (1941); *Bankers Tr. Co. v. Old Republic Ins. Co.*, 959 F.2d 677 (7th Cir. 1992); *Truck Ins. Exch. v. Ashland Oil, Inc.*, 951 F.2d 787 (7th Cir. 1992); *Hawkeye-Sec. Ins. Co. v. Schulte*, 302 F.2d 174 (7th Cir. 1962). It is, of course, well-established that a tort victim "has a legal right to protect his potential interest in [an insurance] policy." *Truck Ins. Exch.*, 951 F.2d at 789. But "[t]hat right is conferred in recognition that a tort victim has a practical, albeit only a potential, financial interest in the tortfeasor's insurance policy, and the impairment of such an interest is an injury that will support standing under Article III." *Id.* (citing *Maryland Casualty*, 312 U.S. at 270; and *Hawkeye-Security*, 302 F.2d at 176–77). The Amlings have not cited, and I have not found, any authority conferring a similar right on a nonparty to a contract outside of the insurance context, nor identified any principle that would do so. And, even so, the Amlings have not articulated how any alleged "interest" (an interest they also have not attempted to define) may be impaired. Unlike a tort victim and a tortfeasor's insurer, the Amlings can—and have—sue both Harrow and Nexus directly for any alleged torts. *See id.* ("[A]n

insured's tort victim cannot (except in direct-action states) sue the insurance company directly."); *Zegar v. Sears Roebuck & Co.*, 570 N.E.2d 1176, 1177 (Ill. App. Ct. 1991) ("In Illinois, direct actions against insurance companies are against public policy."). The Amlings do not have a legally protectable interest in the 1990 asset purchase agreement, and thus lacked standing to bring the federal lawsuit. I would affirm the district court's judgment on that basis.