In the

# United States Court of Appeals
## For the Seventh Circuit

No. 22-1358

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ADAM E. MARANTO,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 3:17-cr-00006-jdp-1 — **James D. Peterson**, *Chief Judge.*

ARGUED JANUARY 5, 2023 — DECIDED AUGUST 10, 2023

Before FLAUM, ROVNER, and BRENNAN, *Circuit Judges.*

ROVNER, *Circuit Judge.* Adam E. Maranto pled guilty to one
count of distribution of child pornography, in violation of 18
U.S.C. § 2252A(a)(2)(A), (b)(1). While serving a term of super-
vised release for that conviction, he committed an additional
offense, which violated the terms of his supervised release.
For that offense and other violations of the conditions of su-
pervised release, the district court revoked his supervision
and sentenced him to an additional term of imprisonment

followed by supervised release. Maranto now challenges two discretionary conditions of supervised release that the court imposed in this most recent sentencing. We affirm.

## I.

In 2006, Maranto pled guilty in the Central District of California to one count of distribution of child pornography. He was sentenced to 120 months' imprisonment, followed by a lifetime term of supervised release. In 2014, Maranto began serving his term of supervised release in Wisconsin. In 2017, jurisdiction over his case was transferred to the Western District of Wisconsin. While on supervised release in Wisconsin, Maranto committed a new crime, possession of child pornography, for which he was charged and convicted in Wisconsin state court. The state court sentenced him to a term of imprisonment of ten years followed by ten years of supervised release.

That state court conviction violated a standard condition of his federal supervised release that prohibited him from committing another federal, state or local crime. Maranto had also violated other special conditions of supervision by possessing an unapproved cell phone and by possessing materials depicting child pornography. Maranto's most serious violation, the state court conviction for possession of child pornography, was a Grade B violation that called for mandatory revocation under USSG § 7B1.3(a)(1). The U.S. Probation Office moved to revoke supervision, and the court granted the motion. The district court then sentenced Maranto to fourteen months' imprisonment to be served concurrently with his state court sentence, followed by a lifetime term of supervised release.

The district court imposed three mandatory conditions of supervised release and twenty discretionary conditions. Maranto objected to two of the discretionary conditions. Discretionary Condition 13 requires that Maranto "[p]rovide the supervising U.S. Probation Officer any and all requested financial information, including copies of state and federal tax returns." Discretionary Condition 19 requires that Maranto, "[a]s approved by the supervising U.S. Probation Officer, undergo psychosexual evaluations which may involve use of polygraph examinations." In the order revoking Maranto's supervised release and sentencing him anew, the district court justified the financial information condition as "[b]ased on defendant's sporadic employment history, the need to monitor his ability to support himself through legitimate means, and the requirement to report place of employment under SORNA." *See* Sex Offender Registration and Notification Act ("SORNA"), 34 U.S.C. § 20901, *et seq.* (requiring sex offenders to register with any U.S. state, territory or commonwealth where they reside, are an employee, or are a student). In that same order, the court justified the imposition of psychosexual evaluations as "[b]ased on defendant's prior criminal record that includes possession and distribution of child pornography, his admissions to past sexual abuse of minors, his unauthorized association with a minor while on supervised release, and his possession of child pornography while on supervised release." The court offered additional justifications and explanations of its rulings during the sentencing hearing, as we will discuss below.

Maranto filed objections to these two conditions prior to the sentencing hearing. Specifically, he objected to the financial disclosure condition on the grounds that there was no evidence that he supports himself through illegitimate means or

would not report his place of employment under SORNA. He argued that the justifications offered by the Probation Office were not supported by evidence, and that the court should therefore deny the request as unreasonable. As for the condition requiring psychosexual evaluations, Maranto conceded generally that he should continue to engage in psychosexual evaluations, but he challenged the use of the polygraph examinations as a tool for doing so. He objected that there was no basis to conclude that polygraph examinations are reliable, that the Probation Office had not explained what qualifications a polygraph examiner must possess before being relied upon to assess truthfulness, and that the Probation Office had not explained what scientific means would be applied in conjunction with the polygraph for concluding whether an individual is being truthful. He urged the court to deny the request for polygraph examinations as not sufficiently justified.

At the sentencing hearing, the government argued in favor of the financial disclosures in order to monitor whether and where Maranto was working, and to track where his money is spent. In particular, the government contended that it was important to be able to discern whether he was spending money for prohibited activities, or to purchase prohibited items like certain cell phones or internet service. As for the use of polygraph examinations as part of psychosexual evaluations, the government first asserted that the issue was not ripe for adjudication because the use of polygraph examinations was not mandatory, and the technology might be obsolete by the time Maranto was released from prison. In the alternative, the government argued that the Probation Office should be able to employ every tool available to monitor sex offenders like Maranto.

Both defense counsel and Maranto himself addressed the court on both issues. Defense counsel emphasized that although some financial disclosure could be relevant to supervision, the condition as written allowed unfettered demand for all financial records, even information that was only tenuously connected to the offense or supervision. Counsel described the requirement as an impediment to people moving about in life and as obstructing daily existence because of the extensive nature of the condition. Counsel argued against the polygraph as an unreliable tool that prompted false confessions and did nothing more than indicate stress, a common feeling not necessarily indicative of deception. Counsel also asserted that the use of polygraphs breaks down trust between a probation officer and the person being supervised. Maranto himself told the court that although he had no problem with financial oversight generally, there are electronic entertainment items that do not require internet access that he wished to buy but that he feared would cause a problem with his probation officer. On the polygraph testing, Maranto complained that it is unreliable, that it prompts false confessions, that some persons can learn to control their physical responses and render the test even more unreliable, and that there is no standardized training for administering polygraphs. He asserted that, when undergoing past polygraph examinations, he had been told he was deceptive on numerous occasions when he was telling the truth and that probation officers subjected him to closer supervision based on the results of these unreliable tests. Finally, he told the court that he found it very stressful to receive notices that he would be subjected to polygraph examinations because he feared he would be subjected to further scrutiny due to unreliable results.

The court imposed the two special conditions over the defendant's objections. On the financial disclosure issue, the court imposed the condition for the reasons asserted by the government, but acknowledged Maranto's request for access to digital games that were not connected to the internet. The court encouraged him to work with his probation officer for access to such games and to return to the court if he had difficulty working through the issue with the probation officer. The court offered a lengthy explanation of its decision to impose the polygraph condition. The court had previously met with the Probation Office to raise concerns with the use of polygraph examinations but was persuaded of their usefulness for supervision purposes after seeing a demonstration. The court acknowledged that the examinations are not accurate enough to be used for the purposes of revocation. Nevertheless, the court noted that polygraph examinations could be beneficial to defendants because truthful disclosures by persons under supervision could lead to greater freedoms. The court also noted that indications of deception could appropriately lead to a reinterview or further and closer supervision. Maranto appeals.

## II.

On appeal, Maranto objects to the financial disclosure condition as overly broad to the extent that it forces him to produce state and local income tax returns because they provide no information about how he spends his money. He objects to the condition allowing polygraph examinations as lacking adequate justification in light of their proven unreliability. In general, we review the court's imposition of discretionary conditions of supervised release for abuse of discretion. *United States v. Patlan*, 31 F.4th 552, 558 (7th Cir. 2022).

Before we address the merits of Maranto's objection to the financial reporting condition, we must address a threshold argument raised by the government. The government asserts that Maranto withdrew his objection to the financial reporting condition when he personally told the court he had no problem with financial oversight. According to the government, this concession operates as a waiver that precludes review of his objection on appeal to the requirement that he produce tax returns. We disagree. It is clear in context that Maranto conceded only that he had no objection to producing records relating to his spending habits. Maranto did not address his broader objection to producing other financial records such as tax returns. He said nothing that would constitute waiver of his objection to the financial records condition to the extent that it requires him to produce tax returns as requested by his probation officer. Indeed, in addition to filing a written objection objecting broadly to the financial oversight condition, Maranto's counsel argued at sentencing against the scope of the condition generally as burdensome and not sufficiently tied to the reasons for ordering disclosure. Because the objection to producing tax returns was preserved in counsel's general written and oral objections, we will review it for abuse of discretion.

That said, the court did not abuse its discretion in requiring Maranto to produce tax returns. The court included tax returns in the financial disclosure requirement based on Maranto's sporadic employment history, the need to monitor his ability to support himself through legitimate means, and the requirement to report his place of employment under SORNA. Although there are other ways for the Probation Office to monitor Maranto's employment and SORNA compliance, tax returns are a helpful source of information, and are

not particularly onerous to produce. We see no abuse of discretion in the court's imposition of this condition.

On Maranto's objection to the polygraph condition, we again must address a threshold issue: the government argues first that the standard of review is irrelevant because there is no final decision to adjudicate. According to the government, Maranto's challenge to the polygraph condition is not ripe because the imposition of the condition rests upon a string of contingencies. The "contingencies" asserted by the government are that Maranto must first finish serving the final six years of his sentence, and then undergo psychosexual evaluations which *may* involve the use of polygraph examinations. According to the government, it would be premature to consider this condition because the technology could change by the time Maranto is released. The government contended that the parties should instead wait to see how the conditions are actually imposed.

We conclude that the issue is ripe for adjudication. "Ripeness and other justiciability requirements bar a federal court from deciding a question that depends on so many future events that a judicial opinion would be 'advice about remote contingencies.'" *Amling v. Harrow Industries LLC*, 943 F.3d 373, 378 (7th Cir. 2019) (quoting *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 538 (7th Cir. 2006)). The court's final judgment imposes this condition on Maranto, and we reject the government's claim that there is no final decision to adjudicate. A contingency is "a future event or circumstance which is possible but cannot be predicted with certainty." Concise Oxford English Dictionary, Eleventh Edition (2004). Completing the remainder of the sentence is not a true "contingency" in this case. Some time will pass before the commencement of

supervised release in virtually every sentence that includes a term of imprisonment (except, perhaps, a sentence for time served), and that term, in this instance, is both short and determinate. As the government itself notes, Maranto has six years remaining on his state sentence. His federal sentence, which is being served concurrently, finishes even sooner. In general, we have reviewed challenges to conditions of supervised release in countless cases where even lengthy terms of imprisonment preceded supervised release. *See United States v. Rhodes*, 552 F.3d 624, 629 (7th Cir. 2009) (noting that we have entertained challenges to conditions of supervised release on "countless occasions" where defendants had sentences of several years remaining before the conditions commenced). Perhaps if the sentence were very long and the defendant very old, the completion of the sentence could be considered a true contingency, but that is not the case here. *See, e.g., United States v. Kappes*, 782 F.3d 828, 859 (7th Cir. 2015) (finding that an objection to a condition preventing contact with any minors including the defendant's own children was not ripe for review where the defendant was forty-seven years old, faced a twenty-year sentence, and had no children at the time of imprisonment).

As for the permissive nature of the Probation Office's use of polygraph examinations, the government supported the imposition of this condition by arguing that the Probation Office should have every tool available for assessing the defendant's sexual desires and conduct in order to protect the community, especially for this type of crime. The impending use of polygraph examinations is hardly speculative in Maranto's case. This is not, after all, Maranto's first go-round with the Probation Office in the Western District of Wisconsin. The Probation Office supported imposition of this condition by

detailing six polygraph examinations that it had conducted on Maranto during his prior term of supervision. In five of the six polygraph examinations, Maranto was found to be deceptive in answering certain questions. On several occasions, that finding resulted in further questioning that led to highly relevant admissions from Maranto. In one case, the finding of deception was used to obtain a search warrant that led to the confiscation of certain items. The government also cited the Probation Office's successful use of polygraph examinations to uncover supervision violations by Maranto. Clearly, the Probation Office considers polygraph examinations to be a very useful tool in supervising Maranto and intends to use this tool upon Maranto's release. The use of polygraphs in Maranto's case thus is not only possible but can be predicted with reasonable certainty. The district court noted that although the condition did not *require* the use of polygraph examinations, the court's understanding was that the examinations were commonly used with offenders on supervised release for sex offenses. The government does not deny that this is so. In light of the Probation Office's extensive history of using polygraph examinations as a tool in Maranto's supervision, there is more than enough here to satisfy the standard for ripeness.

The government's reliance on *Kappes* and *Rhodes* to argue against ripeness is misplaced. In both of those cases, the contested condition at issue was the use of physically intrusive and controversial penile plethysmograph testing.[1] In *Kappes*, the condition imposed included submission to physiological

---

[1] Penile plethysmograph testing involves placing a device on a man's penis in order to measure his sexual response to various visual and auditory stimuli. *Kappes*, 782 F.3d at 855 n.10.

testing, including polygraph testing, "which may be part of" sex offender treatment as directed by the Probation Office. The challenged condition did not even mention penile plethysmograph testing, and there was uncertainty whether sex offender treatment would be ordered following release. In that context, where the challenged plethysmograph test was not mentioned in the supervision condition, and where the treatment program purportedly including that test might not be ordered at all, there were too many contingencies for the challenge to be ripe for review. 782 F.3d at 855. In *Rhodes*, the court imposed a condition requiring psychosexual evaluation, which could then lead to mandatory participation in a sex offender treatment program. That program, in turn, could include penile plethysmograph examinations. The defendant there had failed to object to the condition in the district court and so our review was for plain error only. In that context, we found that the challenge to the condition was not ripe for review because there was too much uncertainty about whether the test would ever be used. 552 F.3d at 627–28. *Kappes* and *Rhodes* are easily distinguishable from Maranto's situation where the Probation Office has already employed polygraph testing on Maranto many times and exhibits every indication that it will continue to do so on his release.

Having found the polygraph issue ripe for decision, we again conclude that the district court did not abuse its discretion in imposing the condition. The district court gave thoughtful consideration to the benefits and detriments of polygraph testing, and noted its usefulness with sex offenders in general and with Maranto in particular. The court made clear that it did not consider polygraph testing sufficiently reliable to support revocation but found that it could have beneficial uses nevertheless. For example, truthful responses

could lead to a lessening of supervision restrictions, and responses deemed not truthful could lead to additional questioning and closer supervision as deemed appropriate by the Probation Office. There is no abuse of discretion here.

AFFIRMED.